Moore v. The W., St. L. & P. Ry. Co.

# MOORE v. THE WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Fellow Servants.** They are fellow servants, who under the direction and management of the master himself, or of some servant placed by the latter over them, are engaged in the prosecution of the same common work without any dependence upon or relation to each other except as co-laborers without rank.

2. **Vice-Principal.** He is a vice-principal who is entrusted by the master with power to superintend, direct or control the workman in his work, and for negligence in such superintendence, direction or control, the master is liable.

3. ————. The servant of a railway company may rely on the vice-principal's promise to protect him while at work on a side-track, notwithstanding the existence of a rule of the company requiring servants to protect themselves by putting out flags while engaged in such work.

*Appeal from Livingston Circuit Court.*—HON. JAMES M. DAVIS, Judge.

AFFIRMED.

*W. H. Blodgett* and *George B. Burnett* for appellant.

(1) The court erred in overruling defendant's demurrer to plaintiff's evidence. Kestler, the foreman, was a fellow servant of the plaintiff, and the defendant was not liable for an injury occurring through his negligence, or on account of a failure on his part to keep his alleged promise to protect plaintiff from injury. *Harper v. Railroad*, 47 Mo. 576; *McGowan v. St. L. & I. M. Ry. Co.*, 61 Mo. 528; *Lee v. Detroit Bridge & Iron Works*, 62 Mo. 565; *Marshall v. Schricker*, 63 Mo. 308; *Blessing v. St. L., K. C. & N. Ry. Co.*, 77 Mo. 410; *Hoke v. St. L., K. & N. W. Ry. Co.*, 11 Mo. Ct. App. 574;

·*Crispin v. Babbitt*, 81 N. Y. 516; *McCosker v. Long Island Ry. Co.*, 84 N. Y. 77; *Slater v. Jewett*, 85 N. Y. 61; *Hoth v. Peters et al.*, 55 Wis. 405; *Weger v. P. Ry. Co.*, 55 Pa. St. 460; *Keystone Bridge Co. v. Newberry*, 96 Pa. St. 246; *Johnson v. Boston*, 118 Mass. 114; *O'Connor v. Roberts*, 120 Mass. 227; *Parker v. St. P., M. & M. Ry. Co.* (Minn.) 19 Northwestern Reporter, 349; *Brown v. Winona & St. Peters Ry. Co.*, 27 Minn. 162; s. c., 38 Am. 285; *Mathews v. Case* (Wisconsin) Central Law Journal, Dec. 12, 1884, p. 478. (2) The court erred in giving the first and second instructions on behalf of the plaintiff. (*a*) Because the instructions erroneously declared that upon the facts enumerated, Kestler and plaintiff were not fellow servants. See authorities *supra*. (*b*) Because the instructions ignore the evidence as to the rules of defendant, in respect to putting out red flags for the protection of employes, while repairing cars on a track other than the repair track. *Chappell v. Allen*, 38 Mo. 214; *Ellis v. McPike*, 50 Mo. 574; *Raysdon v. Trumbo*, 52 Mo. 35; *Iron Mountain Bank v. Murdock*, 62 Mo. 70; *Sullivan v. H. & St. J. Ry. Co.*, not yet reported; Thompson on Charging the Jury, sect. 71, p. 99. (3) The instructions asked by the defendant correctly declared the law applicable to the evidence, and should have been given.

*Waters & Wyne* for respondent.

The only questions in this case are: (1) Was Kestler a fellow servant with plaintiff? (2) Was the defendant guilty of negligence in requiring plaintiff to repair the car on its side track, and in failing to protect him while at work? (3) Was plaintiff guilty of contributory negligence? (4) Was any error committed by the court below in giving plaintiff's first and second instructions and in refusing defendant's second, third, fourth, fifth, sixth, seventh, eighth, and ninth? (1) Kestler was defend-

ant's foreman of car repairs at Stanberry, with power to employ such car repairers as he needed, at such wages as he arranged to pay, and to discharge them at pleasure; and with authority to superintend, control and direct them in their work. He was not a fellow servant with plaintiff. *Granville v. Ry. Co.*, 10 Fed. Rep. 711; *Murphy v. Smith*, 19 C. B. (N. S.) 361; *Brickner v. Ry. Co.*, 49 N. Y. 672; *Moore's Adm'r v. Ry. Co.*, 17 Am. & Eng. Ry. Cases, 531; Woods' Master and Servant, secs. 438, 439, 452, 453; Shear. & Redf. on Neg., secs. 102, 103, 104; *Mann v. Oriental Print Works*, 11 R. I. 184; *Mullan v. Ship Co.*, 78 Pa. St. 25; *Brabbits v. Ry. Co.*, 38 Wis. 289; *Malone v. Hathaway*, 64 N. Y. 5; Whar. on Neg., sec. 232; *Sullivan v. Mfg. Co.*, 113 Mass. 398; *Ford v. Ry. Co.*, 110 Mass. 240; *Crispen v. Babbitt*, 81 N. Y. 516: Redf. on Rys. (5 Ed.) p. 838, sec. 7; *Ry. Co. v. Ross*, 112 U. S. 377; *Ry. Co. v. May's Adm'x*, 108 Ill. 288; *Ryan v. Bagaley*, 50 Mich. 179; *Chapman v. Ry. Co.*, 55 N. Y. 579; *Ry. Co. v. Little*, 19 Kas. 627; *Ry. Co. v. Decker*, 82 Pa. St. 119; *Smith v. Ry. Co.*, 17 Am. & Eng. Ry. Cases, 561. (2) The defendant was guilty of negligence in requiring plaintiff to repair its car on a side track and in failing to protect him while at work. *Flynn v. Ry. Co.*, 78 Mo. 202; *Mo. Furnace Co. v. Abend*, 107 Ill. 44; *Moore's Adm'r v. Ry. Co., supra; Thompson v. Ry. Co.*, 1 Pac. R. 255; *Whalen v. Centenary Church*, 62 Mo. 326; *Gibson v. Ry. Co.*, 46 Mo. 162; *Sullivan v. Mfg. Co., supra; Snow v. Ry. Co.*, 8 Allen 441; Wood's M. & S., secs. 351, 439, 448, 450; Whar. on Neg., secs. 235, 219, 220; *Fransden v. Ry. Co.*, 36 Iowa 372; Shear. & Redf. on Neg., secs. 93–96; *Dowling v. G. B. Allen Co.*, 74 Mo. 14; *Porter v. Ry. Co.*, 71 Mo. 66; *Flynn v. Ry. Co., supra; Conroy v. Iron Works*, 62 Mo. 35; *Hough v. Ry. Co.*, 100 U. S. 213; *Wedgewood v. Ry. Co.*, 41 Wis. 478; *Ry. Co. v. McLallen*, 84 Ill. 116; Cooley on Torts, 561, 562; *Ry. Co. v. Fox*, 3 Pac. R. 320; *Lubke v. Ry. Co.*, 59 Wis. 127; *Ry. Co. v. Levalley*, 36 O. St.

221; *Bessex v. Ry. Co.*, 45 Wis. 477. (3) Was plaintiff
guilty of contributory negligence? The answer charges
that plaintiff made the repairs in question without setting
red flags on each side of the place where he was at work, as
required by a rule of defendant, and was injured thereby.
The foreman ordered plaintiff to make the repairs on the
side track and promised to protect him, and obedience on
the part of plaintiff is not negligence. *Brothers v. Cart-*
*ter et al.*, 52 Mo. 374; *Keegan v. Kavanaugh*, 62 Mo.
232; *Flynn v. Ry. Co.*, 78 Mo. 205; *Ry. Co. v. Bayfield*,
37 Mich. 210; *McKinne v. Ry. Co.*, 5 Pac. R. 482. He
had a right to assume that defendant would be mindful
of his safety. *Bradley v. Ry. Co.*, 62 N. Y. 99; *Mfg.*
*Co. v. Morrisey*, 40 O. St. 148; *Hawley v. Ry. Co.*, 82 N.
Y. 370; *Cook v. Ry. Co.*, 63 Mo. 397; 1 Add. on Torts,
p. 605, note; *Mo. Furnace Co. v. Abend*, 107 Ill. 44;
*Greene v. Ry. Co.*, 31 Minn. 248; *Huddleston v. L. M.*
*S.*, 106 Mass. 282; *Miller v. Ry. Co.*, 12 Fed. R. 600; 2
Thomp. on Neg. 974, 975, 976. Plaintiff swears he never
heard of any rule concerning the use of flags, nor of their
existence or use. (4) The court did not err in giving
plaintiff's first and second instructions. *Brothers v.*
*Cartter et al.*, 52 Mo. 374; *Hicks v. Ry. Co.*, 68 Mo. 329;
Whar. on Neg., sec. 235; *Bradley v. Ry. Co.*, 62 N. Y.
99. (5) Defendant's second, third, fourth, fifth, sixth,
seventh, eighth and ninth instructions present the con-
verse of the propositions contained in plaintiff's instruc-
tions, as given by the court, and were properly refused.

HENRY, C. J.—This is an action to recover damages
for an injury alleged by plaintiff to have been sustained
by him while in the employ of defendant as a car repairer.
The cause of action stated in the petition is, that at Stan-
berry, a station on defendant's road, defendant kept a car
shop, and had in its employ a foreman of car repairs, who
had sole charge and control of hands employed to repair
cars. That on the nineteenth day of October, 1881, and

while plaintiff was so employed as a car repairer, the said foreman ordered and directed the plaintiff to repair the draw-head of one of the freight cars of defendant company, then standing with other freight cars upon a side track of defendant, at said town of Stanberry, and while said cars were detached from any engine ; that said foreman of car repairs then and there promised plaintiff that he would protect him while so employed in repairing said draw-head, and would prevent and keep away any train or engine from coming in or entering upon the said side track, and plaintiff, in obedience to the order and direction, and relying on the promise of said foreman, undertook to repair the draw-head of said freight car, and while engaged thereat, and being upon the side track of said defendant, and between two of the freight cars of said company, an engine of defendant came in and upon said side track, and against the cars standing thereon, and the car upon which the plaintiff was at work was driven back against the freight cars standing in the rear thereof, and plaintiff's right arm was caught and crushed between said cars ; that the said foreman failed and neglected to protect plaintiff while at work on said draw-head, and failed and neglected to prevent and keep said engine from coming upon said side track, and utterly failed and neglected to notify or inform the person in charge of said engine that plaintiff was at work upon the draw-head of said car, upon said side track.

The answer denied every allegation in the petition, and for a further defence alleged, that at and long prior to the date of plaintiff's injury, the defendant had adopted a rule, requiring all car repairers, when engaged in repairing cars, to set out red flags on each side of the place where they were at work, as signals of warning to approaching trains, and that Kestler, the foreman, and the defendant and O'Connor, who was at that time engaged with plaintiff in repairing the car in question, had notice of the rule, but that defendant and Kestler on that

occasion neglected to observe it, and that the injury was attributable to his own and the negligence of O'Connor, his fellow servant. The replication was a denial of the new matter pleaded in the answer. On the trial plaintiff had a judgment for $8,450.00, from which defendant has appealed.

It is virtually conceded by plaintiff that no red flags were set out, as required by the rule of the company, but there was evidence tending to prove that plaintiff had no knowledge that such a rule had been adopted. There was evidence, however, tending to prove the facts alleged in plaintiff's petition, and the question in the cause which presents the most difficulty, is whether plaintiff and the foreman of car repairs were fellow servants. If they were not, and the foreman is to be regarded as the *alter ego* of the company in the transaction which is the basis of this action, plaintiff was absolved from the duty of observing said rule by the promise of the foreman to use proper precautions for his safety. Appellant's counsel say that the rule by which to determine who are fellow servants is well stated by Mr. Wood in his work on Master and Servant, at page 860, as follows: "Whenever the master delegates to another the performance of a duty to his servants, which the master has impliedly contracted to perform in person, or which rests upon him as an absolute duty, he is liable for the manner in which that duty is performed by the middle man whom he has selected as his agent, *and to the extent of the discharge of those duties* by the middle man, he stands in the place of the master, *but as to all other matters he is a mere co-servant.*" The cases on this subject, reported in the books, are numerous and contradictory, and it would be an endless task to review, and utterly futile to attempt to reconcile, them.

Whether the foreman, in this case had or had not authority to employ and discharge car repairers, by no

means determines his relation to the plaintiff at the time the latter was injured. It is asserted in some of the cases that it is a test, but a corporation might adopt a by-law, taking from every officer of the company the authority to employ and discharge hands, and vest it in the board of directors, still leaving with the proper officers the control and direction of the work the hands were engaged to perform. This would not constitute the general manager, or other general officer, a fellow servant of all the men engaged in his department of the service. If the law were otherwise, a railroad corporation would escape liability to its servants in every case, unless it should be proved that the directors had negligently employed the servant whose negligence occasioned the injury, or retained him in the service after learning his unfitness. If we may venture a general proposition on the subject, it is, that all are fellow servants who are engaged in the prosecution of the same common work, leaving no dependence upon or relation to each other, except as co-laborers without rank, under the direction and management of the master himself, or of some servant placed by the master over them. If a person employs another to perform a duty which he would have to discharge if another were not employed to do it for him, such employe, as to that service, stands in the master's stead, with relation to other persons. A railroad corporation impliedly contracts, not only to furnish suitable machinery and appliances for its employes to operate and work with, but to keep them in repair, and the latter duty stands upon no different ground than does its obligation to furnish suitable machinery, in the first instance. When he whose duty it is, as representative of the company, to inspect the machinery, sends any of it to the shop for repair, the company is at once chargeable with notice of its condition, and the foreman, in having it repaired for use, is in the line of his duty.

It is true the company was under no obligation to the

plaintiff to have the car in question repaired at all. It owed no duty to any one, except servants who were to use it, or passengers or shippers of freight in that car, to repair it, but the repair of the car was the company's business, if undertaken at all. The company being a corporation, could not be actually present, either to make or direct repairs, but, having ordered its repair, it had to be represented by some one or more to do the work, and by some one to determine where, how and when it should be repaired. The person who had control of the work, and of the men engaged in it, directing how, when and where it should be done, represented, in those matters, the company itself. It was the duty, a contractual obligation, of the company to provide for the safety of the men at work in repairing the car. The company devolved that duty upon the person who represented it in conducting, ordering and managing the work, and the men engaged in it. It could not impose that duty upon the car repairers, so as to absolve itself from liability for its own negligence. It might make, as it did, reasonable rules, and impose the duty upon the servants to observe those rules, for their own safety, but could not impose upon them the entire duty of protecting themselves. The foreman, in what he had to do for the company, did not represent himself. Except as the agent of the company, he had no interest in the repair ordered. He did none of the manual labor in repairing the car, but, for the company, gave such orders and directions to the car repairers as he thought proper. That the foreman was an inferior servant to Buck, who had a general control and management of car repairs everywhere along the line of the road, does not determine that the foreman was a fellow servant of plaintiff.

In some of the cases and text books the rule is announced that, where a master has committed the entire control and management of his business to another, reserving no discretion or control to himself, the person to

whom such power is delegated stands in the place of the master, so that his acts are in law the acts of the master. Such authority to an agent would certainly constitute him the *alter ego* of the principal, but it is not true that, because the master has reserved, either to himself or some superior agent, some control over the inferior agent, the latter cannot stand in the place of the master. Strictly speaking, all servants from the general manager, down through all the grades of the service, to a brakeman, are engaged in the common work of running trains of cars, and it is only when one of these servants is placed "by the master in his stead to discharge some duty which the master owes to the servant," that he ceases to be the fellow servant of the others, and becomes the representative of the master. Every spike driven into a cross tie is driven with reference to the running of trains over the road, and the man who wields the sledge to drive it, is, in some sense, a fellow servant of every one employed by the company whose services are necessary to the running of trains. Says Mr. Wood: "The instances are rare in which the master, either by himself, or some superior servant, does not reserve some supervision over every department of his business, or, at least, reserve such a right to himself." Sec. 438.

Buck, the general superintendent of car repairs, was not a fellow servant of plaintiff, and could not have been so regarded if he, instead of Kestler, had been present and given the order, and made the alleged promise to protect plaintiff in obeying that order. And if, by authority of the company, Kestler was placed there to do what fell in the line of Buck's duty, did he not, in respect to that matter, stand in the same relation to the company as Buck himself? And if Buck had personally done what it is alleged Kestler did, could the company have successfully defended the action on the ground that Buck and plaintiff were fellow servants? We recognize the principle that one may act in the dual character of a

representative of the master, and as a fellow servant. If it had been the duty of the foreman, in this case, to assist, when necesssary, in the manual work of repairing the car, in addition to the other duties of superintending, controlling, and directing such work, and he had gone under the car with plaintiff to assist in repairing it, and by some negligent or unskilful act, while so engaged, injured the plaintiff, the latter could not have recovered without proof of facts which entitle one to recover when injured in consequence of the negligence or unskilfulness of a fellow servant. Under the circumstances proved in this case, we think that plaintiff and Kestler were not fellow servants.

The defendant's refused instructions asserted the following general propositions, viz. That although plaintiff and Kestler were not fellow servants, Kestler was not authorized by the company to make the promise alleged to protect plaintiff while under the car, and that notwithstanding such a promise, yet plaintiff could not recover if he failed to set out the red flag, as required by the rule, or to set some one to watch for the approach of engines and trains. It being conceded, as it must be, that the company owed a duty to the men under the car to provide for their safety, can it be that the foreman had no authority in an emergency to use any other means than those adopted by the company? That the red flags, and nothing but the red flags, was the means he was to employ? If for any reason that would clearly, in a given case, have been insufficient as a warning, can it be possible that the foreman would be restricted to the use of the red flags? Or, if, in such case, he had had the red flag set up, and one of the men was injured in consequence of its insufficiency to give the warning, that the company would not be liable to the injured party? Has it discharged its duty by simply adopting a means of protection ordinarily sufficient, when the person in charge of the work knows that in the particular case it is not a sufficient

warning? If the foreman has authority in such an emergency, that authority results from his general authority to perform the duty of the company, in protecting the employes under his control, in the performance of a dangerous work for the company, and he was authorized to make the promise to the plaintiff for the company, and undertook to set out the red flags in his possession, or to adopt any other means necessary to secure the safety of the men, thereby absolving them from the duty of setting out the flag, or setting the watch. As to the latter, there was no proof of a rule requiring one man to watch while the others worked; and it was in proof that while the work in question could possibly have been done by one man, it could not be conveniently or promptly done by less than two.

It being the duty of the company to provide for the safety of men while engaged in its dangerous service, if it delegates such authority as to the employment of men, and their control and management to an agent, will the law, in the absence of an express stipulation to that effect, declare that such agent is under no obligation, and has no power, as the representative of the company, to provide means for the safety of servants whom he sends into a place of danger to work. If so, the duty of the company to provide such security may be easily evaded by having no one on hand to perform it. And by simply adopting reasonable rules, the observance of which will ordinarily afford protection, although in a given instance the observance of such regulations would afford no protection whatever, and the person representing the company in the direction of the work and the control of the hands, knew the fact. Such abdication of duty can certainly find no support, either in reason or authority. The judgment is affirmed. All concur.