Macfarlane, J.
I adopt, in substance, the statement made by Babclay, J., to his opinion filed in division one. 24 S. W. Rep. 746.
*515 “This is an action for personal injuries grounded on negligence. The defendants are the receivers of the M., K. & T.'Railway Co. The pleadings need not be specially recited.
“The case was tried before the court and a jury with the result of a verdict and judgment for plaintiff for $3,000, from which defendants appealed.
“That defendants were receivers in possession of, and operating, the railway line where the injury happened was admitted, and also that plaintiff was, at the time, in their employ as a section foreman.
“The plaintiff offered evidence tending to prove that one day in June, 1889, he and several laborers, under .his direction, were at work along the defendant’s railway, some three miles from Clifton station. At that place the track was laid upon an embankment. While thus engaged, a train approached, and the fireman on the locomotive, as it passed, threw out a piece of coal, which struck plaintiff in the left eye and destroyed the latter.
“It had been the custom for many years to transmit orders of the roadmaster to the section foremen along the road, by forwarding the same to the nearest station, and then sending the message by some employee on the next train, who would throw the message off in passing the party for whom it was intended.
“In this instance the message of the roadmaster was placed in charge of the fireman. It was inclosed in an envelope. The fireman tied it, with a string, around a piece of coal, about three by one and one half inches in size; and, while passing the spot where plaintiff was standing (about four feet from the track), threw the message and coal to him in such a manner that his eye was put out.
“Considerable evidence was submitted to show that the traffic (or operating) and road (or construction) *516 departments of this railway were separately managed and directed, each under the supervision of a chief superintendent.
“The defendant’s evidence (so far as it contradicted plaintiff’s) was directed entirely to the question of the extent of plaintiff’s damages; but as no issue is made, in this appeal, on that point, we need not go into it.
“The foregoing is a sufficient sketch of the material features of the case.”
Defendant insists that plaintiff and the fireman, in the circumstances, were mere fellow servants, and the receivers were not therefore liable for the negligence of the one which resulted in the injury to the other. Counsel for plaintiff, on the other hand, insists that defendant is liable for the injuries caused by the negligent manner ifi which the message was delivered upon one of two grounds: First, that the fireman, in performing the duty imposed upon him, was the agent, or vice principal, of the receivers, and his negligence was that of his principal; second, that if the fireman was not a vice principal of defendant, then he and plaintiff were mere servants of a common master, their employment was in different parts of the service, and the receivers were not exempt from liability on account of the fellow servant rule.
I. I am able to see no possible ground upon which the first contention can be sustained. I agree, as claimed, that power to control and direct is not an absolute test by which to determine whether the relation of one employee to another is that of vice principal. The liability of the master for injury done to one servant through the negligence of another, engaged in the same department of service, is made “to depend upon the character of the act in the performance of which the injury arises, without regard to the rank of the employee performing it. If it is one pertaining to the *517 duty the master owes to his servants, he is responsible to them for the manner of its performance.” Flike v. Railway, 53 N. Y. 549; Crispin v. Babbitt, 81 N. Y. 516; Ford v. Railway, 110 Mass. 240.
If, therefore, a careful delivery of the message was a duty the receivers personally owed to the plaintiff, the mere rank or grade of the fireman would not relieve them from liability if plaintiff was injured by a negligent performance of the duty. The liability on this ground must be determined from the character of the act performed. If it was one the receivers owed to plaintiff it was their act. If it was one falling simply within the duty of the servant it was the act of the servant, and the defendant would not be liable for its negligent performance, assuming that the' relation of plaintiff and the fireman did not bring them within the department rule.
The act the fireman was required to perform was the delivery from a running train of a message to the plaintiff.' It can not matter how important the message may have been, nor that it contained an order the receivers, through their roadmaster, or other agent, were required to give. The injury did not result from the nature of the message or from a failure to transmit it. The service required of the fireman was that of a servant which any messenger could have performed, and the manner of its delivery did not pertain to the duty the receivers owed to plaintiff. They owed him the duty only of using reasonable care to select a competent and careful messenger.
After the master has discharged the duty he owes his servants, such as proper care in the selection of those with whom they are required to work, providing suitable tools and machinery, etc., the servants must look to each other for protection in the performance of their respective duties.
*518 The fireman can be regarded as the agent or vice principal of the receivers under no test which has ever been applied by the courts of this state, or elsewhere, so far as I have been able to discover. He was given no power to superintend, control or direct the plaintiff, which is the usual test, nor was he performing a duty the receivers owed to plaintiff other than such as they owe to every other employee in their service. Miller v. Railroad, 109 Mo. 350, and cases cited.
II. That plaintiff and the fireman were, in their general employment, working in different and distinct departments of the business of the receivers is unquestioned. That one employee-of a railroad company while engaged in the road department as a section hand, and another one while working in the operating department, as an engineer or conductor, are not fellow servants, within the rule exempting the company from liability for the injury inflicted to one by the negligence of another, has been declared by this court in several recent cases. Dixon v. Railroad, 109 Mo. 419; Schlereth v. Railroad, 115 Mo. 87; Sullivan v. Railroad, 97 Mo. 117; Parker v. Railroad, 109 Mo. 362.
In none of these cases was an attempt made to establish a rule which could be applied to all cases. Each case was made to depend upon its own facts. It was said in the Dixon case, supra: “We will not essay to establish any definition of fellow service to enlighten (or increase) the difficulties of this branch of the law, but shall merely deal with the facts before us.”
In most cases the relation of the servants can easily be determined under the rule declared upon the facts in that case. The injured quarryman and the negligent engineer were held not to be fellow servants for the reason that “each looked to a different individual as the master’s representative for direction in his work and had no practical connection' with the supervisor *519 who guided and supervised the acts and conduct of the other.”
Under the facts in the Parker case, supra (p. 409), Black, J.,'says: “The real and only point of distinction, it seems to us, arises out of the fact that the servants are so associated and related in the performance of their work that they can observe and influence each other’s conduct, and report any delinquency to a correcting power.”
The same judge in the subsequent case of Relyea v. Railroad, 112 Mo., 86, in referring to the cases above cited, states the rule thus: “These cases reject the rule of exemption as it is often broadly stated, though less frequently applied, that all are co-servants who are engaged by the same master in carrying on some general enterprise, no matter how different and disconnected the work may be. They assert the more reasonable and just rule, that they are co-servants who are so related and associated in their work that they can observe and have an influence over each -other’s conduct and report delinquencies to a common correcting power; and they are not co-servants who are engaged in different and distinct departments of work. They show that track walkers and track repairers and persons operating a stone crusher are not fellow servants with those engaged in operating trains.”
In the case of Railroad v. Moranda, 108 Ill. 576, which is one of the leading cases on the doctrine that servants are not necessarily co-servants, within the rule exempting the master from liability, simply because they are engaged in some part of the work of the common master, it is said: “To constitute servants of the same master 'fellow servants,’ within the rule respondeat superior, it is not enough they are engaged in doing-parts of some work, or in the promotion of some enterprise carried on by the master, not requiring coopera *520 tion nor bringing the servants together or into such personal relations that they can exercise an influence upon each other * * *, but it is essential that they shall be, at the time of the injury, directly cooperating with each other in the particular business in hand, or that their usual duties shall bring them into habitual consociation, so that they may exercise an influence upon each other promotive of proper caution.” See, also, same case reported in 93 Ill. 302.
From these rules, and the reasons for them, it is manifest that the mere general employment in different departments of service, and under different immediate heads, are not absolute tests of the relationship the servants of the departments bear to each other as it affects the liability or exemption of the master. If the servants were, at the time of the injury, actually cooperating together in the particular business in hand, they would be fellow servants for the time being, notwithstanding they may have been regularly employed, and their ordinary duties required them to work in different departments. Indeed, while cooperating in the same work the servant would be engaged in the department in which the work was required, and under the direction of the agent of the master in charge of it.' It might be, and doubtless often is, the case that the duties in distinct departments are so blended as to make it difficult, if not impossible, to determine in which the work is done. Should the employees of a freight train be engaged in assisting trackmen in unloading a carload of ties, or rails, the two sets of men could not but be regarded as fellow servants in respect to the particular work in which they are engaged, though their general employment was in different departments and under different superintendents, and though the work may have been directed by one or both. They would have equal opportunity of observing and influencing *521 the conduct of each other as though their general work brought them into habitual association.
The principle, we think, was involved and necessarily decided, in the case of Murray v. Railroad, 98 Mo. 574. Murray, who was in the employ of a cable railway company as a watchman at a street car crossing, was killed by the negligence of the gripman in the management of a train operated by the same company. One of the duties of deceased was to keep watch of the cars as they approached the curve, and to give signals to the gripman, so that only one train should pass the curve at a time. "While in the performance.of this duty he was killed. It was held that the two were fellow servants. It was said: “The negligent gripman and the deceased were both employed in operating the car, one from the ear and the other from his station on the ground. They were engaged in the same department of work, and their common business was such that one could exercise a preventative care over the other. They were evidently servants employed in the same common employment.” The flagman performed two duties for his employer, one of which was to guard the crossing and prevent injuries to persons crossing the tracks, the other to signal approaching cars to stop so that they would not pass each other on the curve. In the latter duty he cooperated with the gripman in the management of the cars. While performing that duty he was held to have been a fellow servant with the gripman. In the discharge of his several duties he might well have been under distinct individuals as the master’s representative for direction in his work.
Now it seems to me perfectly clear that in the act of the fireman, which resulted in the injury to plaintiff, the two servants were cooperating together. In respect to the performance of the act a duty devolved upon each. One was required to deliver, and the other to *522 receive, the message. Though the respective duties were very simple, that fact did not change the relationship of those performing it. Not only that, but the evidence shows it was one of the ordinary duties of the service often performed. Each understood, by signals from the other, what was required of him. On that subject the plaintiff testified:
“By Mr. Walter: State what occurred there and what you saw. A. I saw this man, the fireman, had this message in his hand before he got to me.
“ Q. You saw the fireman with the message in his hand? A. Yes, sir; I watched him before he got to me to throw it, and he didn’t do it until he got to me, or in about six feet of me. I didn’t know anything then, he throwed it and it hit me.”
Upon cross-examination, after having explained the ordinary manner of sending out messages to the section men at work upon the line of the road, and that upon the day in question, as the train approached, the plaintiff got out of the way of it by stepping down the embankment about four feet from the track, on the west side. His cross-examination proceeded as follows:
“ Q. Was that the fireman’s side? A. Yes, sir.
“ Q. You watched to see that he had a message? A. Yes, sir.
“Q. Did you motion for him to drop it?' A. Yes, sir.
“Q. He got opposite you and then dropped it? A. He was very close, he was very near me.
UQ. The train was in motion? A. Yes, sir, I think it was.
tlQ. Just show the jury how he delivered it? A. Well, he was coming toward me with the message in his hand.
“Q. In which hand did he have it? A. I don’t recollect. I suppose more than likely it was in his left *523 hand. He was coming toward me, and when he got very near me, about six or eight feet of me, he just pitched it that way (indicating).”
It appears further that the duty of delivering the message was required by the roadmaster who was the immediate superintendent of plaintiff. The duty of each pertained to the road department. Each was acting under the same directing power, and, as to the business in hand, they were cooperating.
Under these circumstances they were fellow servants within the rule respondeat stiperior. Judgment reversed.
Black, O. J., Gantt and Sherwood, JJ., concur. Brace, Barclay and Burgess, JJ., dissent.