LON P. GARLAND, Appellant, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, November 5, 1900.

1. Fellow · Servant:  MASTER, REPRESENTATIVE OF:  EMPLOYEE.  An employee, of whatever grade, may occupy a dual position.  In the performance of some duties he may be the representative of the master, and as to others he may be a fellow servant with others engaged in the same department of service.

2. Switchmen: SIGNAL TO ENGINEER.  In the case at bar it was the duty of the switchman making the coupling to give the signal, and it was the duty of the intermediary to transmit it, and this being so, in the giving of a wrong signal Winegar did not represent the defendant.  He failed merely to observe a precaution which has been adopted by him and his fellow laborers for their mutual protection in the execution of the work.

Appeal from the Ralls Circuit Court.—*Hon. David Henry Eby,* Judge.

AFFIRMED.

*E. W. Major* and *J. D. Hostetter* for appellant.

(1)   The foreman in charge of a gang or crew of men, with power and authority to give orders and command those under him when, where and how they should work, is the vice-principal and not a fellow servant.   The fact that he had no power to discharge and employ men does not destroy the situation as the *alter ego* of the master.   Hall v. The St. Joseph Water Company, 48 Mo. App. 356; Cox v. Granite Company, 39 Mo. App. 424; Moore v. Railway, 35 Mo. 588. (2)   The duties which a master owes his servants and employees, may be delegated to subordinates—even to common laborers, etc., and the master will be liable for their negligence.   The particular servant or employee, by reason of the delegation becomes the *alter ego* of the master.   Jones v. The St. Louis, Naples & Peoria Packet Co., 43 Mo. App. 398; Dayharsh v. Railway, 103 Mo. 570.   (3)   In the case at bar, Winegar was the foreman or person ' representing the master in giving orders and directing the train, its movements and the men handling same.

*Geo. P. B. Jackson* for respondent.

(1)   The demurrer to the evidence was properly sustained for several reasons.   The only negligence complained of is that the foreman of the crew communicated a wrong signal to the engineer.   Plaintiff and Winegar were fellow servants in the work in which they were engaged at the time plaintiff was hurt.   The alleged negligence of Winegar did not occur in the discharge of any duty by him as a vice-principal of the defendant.   For such negligence the defendant can not be held liable to the plaintiff, and therefore for that reason the demurrer to the evidence was properly sustained. Wood on Master and Servant, sec. 438, p. 860; McKinney, on Fellow-Servant, sec. 42, pp. 109 and 110; 3 Elliott on

Railroads, secs. 1318 and 1319; Harper v. Railroad, 47 Mo. 567; Moore v. Railroad, 85 Mo. 588. (2) The service in which the plaintiff was engaged was a hazardous one, the dangers being obvious and known to all persons, and, as the plaintiff testifies, known to him at the time he entered defendant's employment. Fugler v. Bothe, 117 Mo. 475; s. c., 43 Mo. App. 44; Epperson v. Tel. Co., 155 Mo. 346. (3) The plaintiff was guilty of contributory negligence. He had received the Bishop safety coupler and had agreed to use it in making couplings, but neglected to do so. Pryor v. Railroad, 90 Ala. 32; 8 Sou. 55; Russell v. Railroad, 47 Fed. Rep. 204.

BIGGS, J.—This is an action for personal injuries. The plaintiff was in the service of the defendant as a switchman. He was injured while coupling cars. At the close of his evidence the circuit court peremptorily directed the jury to return a verdict for the defendant. This was done and judgment was entered on the verdict. The plaintiff has appealed.

The right to recover rests on the contention that the foreman of the switch gang was a vice-principal, and that as such vice-principal he gave a negligent order which resulted in plaintiff's injury.

The law is settled in this state that an employee, of whatever grade, may occupy a dual position. In the performance of some duties or some acts he may be the representative of the master, and as to others he may be a co-laborer or fellow-servant with others engaged in the same department of service. This is the law declared by Mr. Wood in his work on Master and Servant at page 860, and first quoted approvingly by the supreme court in Moore v. Railroad, 85 Mo. 588. The author says: "Whenever the master dele-

gates to another the performance of a duty to his servants, which the master has impliedly contracted to perform in person, or which rests upon him as an absolute duty, he is liable for the manner in which that duty is performed by the middle man whom he has selected as his agent, and to the extent of the discharge of those duties by the middle man, he stands in the place of the master, but as to all other matters he is a mere co-servant." The same doctrine is recognized in Card v. Eddy, 129 Mo. 510, where the court said that the liability of the master under the rule depended "upon the character of the act in the performance of which the injury arises, without regard to the rank of the employee performing it. If it is one pertaining to the duty the master owes to his servants, he is responsible to them for the manner of its performance." Again, in the case of Miller v. Railroad, 109 Mo. 350, it was said: "There is no doubt but a foreman or other representative of the master may occupy a dual position; that is to say, he may at the same time be a fellow servant and an agent or representative of the master. There are certain duties which are personal to the master, and for the non-performance of which he is liable to his servants. These duties may be delegated to a foreman or even to a servant, and the master is still liable for their non-performance."

The plaintiff's cause of action as stated in his petition is to the effect that he was a switchman in the yards of defendant at the city of Hannibal and with other switchmen was acting under the orders of one Winegar, who was foreman of the switch crew; that in making a coupling of cars at night the plaintiff gave to Winegar the "slow signal," which Winegar as foreman was bound to transmit to the engineer on the approaching locomotive; that the engineer received and obeyed the signal and stopped the speed of the engine and

the cars attached thereto; that thereupon and when the approaching cars were quite near the plaintiff stepped between the rails ·for the purpose of making the coupling, and that just at the instant the coupling was to be made Winegar negligently gave to the engineer the "fast signal," by reason ·of which the cars came together with a sudden lurch and caught plaintiff's hand between the draw heads. The gist of the cause of action as above stated, is that in order to guard ·the switchmen from unnecessary danger in coupling and uncoupling cars it was the duty of Winegar *as foreman* to transmit from the switchman to the engineer in charge of the locomotive orders concerning the movements of the engine; that in the discharge of the work the plaintiff relied on the observance of this duty by Winegar, and that by reason of its non-observance the plaintiff was injured.

If the plaintiff's evidence had made out such a case as is stated, the judgment of the circuit court could not be sustained. But a different case is presented. Concerning the general plan for making up trains or removing cars from one track to another, Winegar, according to plaintiff's testimony, acted as a vice-principal. But in the execution of the work plaintiff's testimony conclusively shows that Winegar's duties were those of an ordinary switchman. Thus if Winegar was stationed nearest to the place where a coupling was to be made it became his duty to make it, and it then became the duty of the switchman stationed between him and the locomotive to transmit ·his signals to the engineer. On the other hand, if the duty of coupling cars devolved on one of the switchmen and Winegar was stationed between him and the engine (which is the case here), it became his duty to transmit to the engineer whichever signal the switchman might give. As to the signal to be given the intermediary had no authority whatever. The switchman making the

coupling was to determine it, and it was the duty of the intermediary to transmit it. This shows conclusively that in respect of the matter of which complaint is made, to-wit, the giving of a wrong signal, Winegar did not represent the defendant. He failed merely to observe a precaution which had been adopted by him and his co-laborers for their mutual protection in the execution of the work.

Again, it devolved on the plaintiff to show that the alleged negligent act of Winegar caused the injury. We think that the plaintiff has failed in this. The physical facts, as testified to by him, disprove it. But we need not enter into the discussion, as the case has been disposed of on other grounds which are entirely satisfactory to us.

The judgment of the circuit court will be affirmed. All concur. Judge *Bland* in the result.