## GEORGE W. PADGETT, Respondent, v. SCULLIN-GALLAGHER IRON & STEEL COMPANY, Appellant.

St. Louis Court of Appeals.    Argued and Submitted October 5, 1911.    Opinion Filed November 7, 1911.

1. **MASTER AND SERVANT: Negligence of Fellow-Servant: Liability of Master.** An employer is not liable for injury to an employee caused by the negligence of a fellow-servant.

2. **————: Injuries to Servant: Negligence of Fellow-Servant: Liability of Master: Facts Stated.** For the purpose of wiping grease from a trolley wire, so as to permit an electric crane to perform its functions, an electrician took into the crane cage an open can of gasoline and some cotton waste. The operator of the cage and another operator, who also was in the cage, remonstrated against placing the gasoline in the cage, on the ground that it was dangerous, but the electrician persisted in placing it there. The electrician then told the operator to turn on the power to move the crane, which was done, and the cotton waste, saturated with gasoline, with which the electrician was wiping off the trolley wire, became ignited from a spark of electricity, and set fire to the electrician's clothes. In attempting to extinguish the fire on the electrician's clothes, the can of gasoline was knocked over, setting fire to the interior of the cage and severely burning the operator. The electrician and the operator worked under a common head—an assistant superintendent—who was not present. It was the duty of the electrician to make necessary repairs on the electrical appliances, and while he was engaged in such work, the operator gave him such assistance as he required, but the operator was neither employed nor liable to be discharged by him, being responsible only to the common head. In an action against the master by the operator, *held*, that 'in performing the acts from which the injury resulted, plaintiff and the electrician were fellow-servants; *held*, *further*, that the injuries to plaintiff did not directly result from a defective wire, nor from the attempt of the electrician to wipe off grease from the trolley wire, nor from the fact that plaintiff, the other operator and the electrician were all crowded into the small cage, but resulted from the overturning of the gasoline which had been placed in the cage practically by the action of the three men. *Held*, by NORTONI, J., concurring, that plaintiff's injury resulted from the negligent acts of the electrician in using cotton waste saturated with gasoline and employing an open

can as a receptacle for the gasoline in such a manner as to occasion an explosion, and, as to this matter, the electrician acted in his capacity of a laborer, wiping grease from the trolley wire while plaintiff was moving the crane ahead to aid him.

3. **TRIAL PRACTICE: Demurrer to Evidence: Conclusions not Considered.** On demurrer to the evidence, plaintiff is entitled to the benefit of all inferences that may be drawn from the facts, but conclusions of a witness are not to be accepted as facts.

4. **EVIDENCE: Conclusions: Master and Servant.** In an action by a servant for personal injuries, evidence by plaintiff that in doing certain work he acted under the direction of another servant was not sufficient to establish that such other servant was his superior, but was a statement of a mere conclusion, and as such possessed no probative force.

5. ————: ————. The conclusions of a witness on facts are not to be accepted, either by the jury or by the court, as facts.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

REVERSED.

*Watts, Williams & Dines* and *William R. Gentry* for appellant.

(1) The court erred in overruling the demurrer to the evidence, because the plaintiff and Dowd were fellow-servants. (a) They were fellow-servants because engaged in a common employment under the same master working to accomplish the same common end. Donelly v. Mfg. Co., 75 Pac. 1017; Railroad v. Kneirn, 152 Ill. 456; Richardson v. Mesker, 171 Mo. 666; Hawk v. Lumber Co., 166 Mo. 121; Sams v. Railroad, 174 Mo. 53; Murray v. Railroad, 98 Mo. 573; McCarty v. Hotel Co., 144 Mo. 397; Jackson v. Mining Co., 106 Mo. App. 441; Electric Co. v. Wells, 110 Ga. 192; Koszlowski v. Locomotive Works, 96 N. Y. App. Div. 40; Stringham v. Stewart, 111 N. Y. 188; Delory v. Blodgett, 185 Mass. 126; Dantzler v. Coal Co., 22

L. R. A. 361; Ewan v. Lippincott, 47 N. J. L. 192, 54 Am. Rep. 148; Henshaw v. Pond's Extract Co., 66 Hun 632; Quigley v. Levering, 167 N. Y. 58 (54 L. R. A. 62); Helling v. Schindler, 145 Cal. 303; Cregan v. Marston, 126 N. Y. 568; Manning v. Gen. Riv. & Lake O. S. Co., 66 N. Y. App. Div. 314; Bjbjian v. Rubber Co., 164 Mass. 214; Meehan v. Mfg. Co., 52 N. E. 518.

(b) The only idea advanced in the petition as to why Dowd was the representative of the master was that he was the one to whom was entrusted the duty of taking care of the electrical appliances and the place where the plaintiff had to work. This is overcome by the fact that at the time of the accident, if it should be construed that Dowd was engaged in repair work, the plaintiff was also engaged with him in the same repair work, and therefore the rule making the master responsible for the negligent act of the servant who repairs the appliance negligently and thereby causes injury to another servant who thereafter uses it as a completed appliance, does not apply. Murphy v. Railroad, 88 N. Y. 146; Locomotive Works v. Hand, 50 N. J. L. 464; Slavens v. Railroad, 97 Fed. 255; Sherrin v. Railroad, 103 Mo. 384.

*Morgan L. Masters* and *A. R. Taylor* for respondent.

It is the rudimental law of the relation of master and servant, that it is a duty incumbent on the master to exercise ordinary care in providing to his servant, means and appliances wherewith to do the work of his employment with reasonable safety to the servant, and such care to provide and maintain a place to work reasonably safe and suitable for the servant to work in the discharge of his service. This duty of the master is inherent in the relation, and the master cannot delegate such duty to another servant, whatever his rank, and escape liability for its negli-

gent performance or omission. Dayharsh v. Railroad, 103 Mo. l. c. 576; Herdler v. Buck Co., 136 Mo. l. c. 16; Doyle v. Trust Co., 140 Mo. l. c. 10; Bane v. Troin, 172 Mo. l. c. 317; Combs v. Construction Co., 205 Mo. l. c. 384; Koerner v. Car Co., 209 Mo. l. c. 160. In this last cited case the switchman was charged with the master's duty, and the case was not under the railroad fellow-servant law. Burkhard v. Rope Co., 217 Mo. l. c. 482. In this case the doctrine is reasserted that the servant chosen by the master to direct and control the particular work, is the representative of the master. In the recent case of Clark v. Iron and Foundry Co., 137 S. W. Rep. l. c. 581, the same doctrine is asserted.

REYNOLDS, P. J.—Respondent, plaintiff below, was employed by defendant as an operator on a crane used in the works of defendant and which was moved about on tracks by means of electricity, running from one end of the foundry of defendant to the other. On one end of the crane there is a cage about four feet wide by six feet long, in which the operator stands. It is about thirty feet above the ground and is reached by means of a stationary ladder. There were several controllers and a switchboard in the cage, the controllers being used to operate the crane. The current is carried along trolley wires and connection made through a trolley bar which has a wheel on one end, the wheel being in contact with and rolling along the trolley wire. On the afternoon of the day of the accident, the trolley wire had been broken and been repaired by the day electrician, "and when it was joined together the greasy side was turned so the wire would not receive the electricity," to quote the language of plaintiff. It was therefore necessary to clean off this grease. Plaintiff was on the night shift, working from 6 p. m. to 6 a. m. On the evening, that is after six o'clock of the day of the accident, plaintiff and one Cunningham,

who was operator of another crane, also moved by the same trolley wires, were in the cage of the crane operated by plaintiff, intending to run it along the track. Neither crane could be moved until the grease was cleaned off of the trolley wire, and Cunningham had gone into the cage occupied by plaintiff, apparently to see about cleaning the trolley wire. One Dowd was an electrician who was on duty at night about the works. On the evening in question and about half past six, Dowd came to the cage where plaintiff and Cunningham were, to wipe the grease off of the trolley wire. Plaintiff had looked over the machinery of the crane and had oiled it and was about ready to start it when Dowd came along and called to him to hold on. When Dowd came to the crane where the men were, he was carrying in his hand a lot of cotton waste and an open can containing gasoline. He told the men that he would clean the trolley wire off, would take the grease off of the trolley wire. Whereupon he (Dowd) started to climb up the ladder and into the cage. Dowd told plaintiff that he was there with gasoline to clean the wire off. Whereupon plaintiff said to him, "You had better not bring it up here. Don't bring it up." Dowd, however, came up the ladder with the gasoline and, according to plaintiff, saturated the cotton waste with the gasoline. After he had done that he told plaintiff to "swing down the shop," which meant to turn on the current of electricity and put the crane in motion or "swing" it, so that he (Dowd) could wipe the trolley as they moved along. The open can containing the gasoline, which it appears was a tomato can, was sitting on a rack in the cage or on one of the controllers. Plaintiff testified that the reason he told Dowd not to bring the gasoline up into the cage was because he knew it was explosive and a dangerous substance and that when fire was brought near the vapor of gasoline an explosion was likely to occur, and he further testified that Cunningham said

to Dowd that it was dangerous to bring the gasoline up into the cage and not to do it; that there was liable to be a spark from the trolley wire.

According to Cunningham, the only other eyewitness to the transaction, and who testified in the case on behalf of plaintiff, Dowd came up to the foot of the ladder with the can of gasoline and some cotton waste in his hand. He came up the ladder into the cage, saturated the waste with the gasoline and put the can down. Whereupon witness told him it was dangerous; that he never used any of it. Dowd paid no attention to him but went to the corner of the cage to clean the trolley wire and told plaintiff to move—to move the crane, that is to turn on the current. On cross-examination, however, this witness said that he had saturated the waste himself when Dowd came up into the cage; that Dowd had brought the can with the gasoline in it up to him and handed it to witness, who set it on the controller. Plaintiff only turned on one point, as he called it, to start the crane in motion and Dowd proceeded to wipe off the trolley wire. As soon as the current was turned on there was a spark emitted from the trolley wire against which Dowd was holding the waste saturated with gasoline and the waste caught fire. Dowd forthwith dropped it to the floor of the cage. The fire from the waste was communicated to the clothing of Dowd, who had on heavy gloves and so protected his hands, but his clothing on the front of his body being on fire, plaintiff jerked Dowd's "jumper" off from behind to put the fire out. Dowd dropped the burning waste to the floor of the cage. In the confusion that resulted from trying to put out the fire on Dowd's clothes, the can of gasoline was overturned, its contents spilling on plaintiff and on the floor and the whole mass was set on fire, and plaintiff's clothing catching fire, he was very severely burned. So much for the accident.

Touching the relation of the parties to each other, the testimony was to the effect that all the men at work for defendant in these shops, were under a common head, a Mr. Pearson, who was assistant superintendent of the works. He had hired plaintiff some three years before. There were two or more electricians who appear to have been under the immediate charge of a Mr. Ed. Jannell, who was the chief electrician, and who also appears to have been under Mr. Pearson, but does not appear to have been on night duty. Dowd and apparently another man were the electricians who had to attend to anything that had to be done at night in connection with repairs of the electric appliances connected with the machinery as well as the lights. Any new work, such as installation, connected with the electrical appliances that had to be done, was never done at night but done during the day. On this particular evening, Dowd was on duty. It was customary for Dowd or whoever the electrician on night work was, to be called on to attend to whatever had to be done connected with repairs to the electrical mechanism or operations, or, of his own motion, Dowd would attend to it himself. The crane men or other employees would assist him in this work when called on by him. Plaintiff and Cunningham both testified that if there was anything that Dowd needed in the way of assistance in doing his work in connection with their cranes, that instead of sending for anyone else to do it they were in the habit of helping him, although they themselves did not touch the wire, that being left to Dowd, and while Dowd was working about the electrical appliances or the electricity, whatever orders he gave connected with it, or whatever orders were necessary to be given in the way of assisting him in it, were given by him (Dowd) to them and carried out by them. They, however, were neither employed nor liable to be discharged by Dowd, being responsible to Mr. Pearson, the common head. Plaintiff said as to

this, that if he had declined or refused to obey any orders that Dowd gave him in connection with the electrical work that he supposed Dowd would report him to the superintendent, Pearson, but that Dowd himself had not employed him, had nothing to do with his employment and had no power to discharge him.

This is practically the evidence in the case with reference to the accident and the relations between Dowd and plaintiff.

The remainder of the testimony in the case was from the physician and from plaintiff himself as to the extent of his injuries. That plaintiff was very seriously burned and possibly is crippled for life, is beyond question, although at the time of the trial he was still retained in the employ of defendant at the wages he had formerly been receiving.

On this state of facts plaintiff instituted this suit in the circuit court of the city of St. Louis. The charging part of the petition avers that defendant's agent in charge of keeping the trolley wire in repair and reasonably safe and suitable for the operation of the trolley, and to whom was entrusted the duty by defendant of keeping the trolley in order and reasonably safe for plaintiff while at work, negligently and carelessly used gasoline oil upon said trolley wire to repair and clean it; that defendant's said agent was also negligent in having the can of gasoline open at and about said trolley wire when it was liable to ignite and injure plaintiff as it did do, "which negligence directly contributed to cause plaintiff's said injuries." It is also averred that defendant was negligent in having said place where plaintiff was to work in the discharge of the duties of his employment rendered dangerous by so using gasoline as above charged. It is further averred that the agent of defendant "had sole charge of said trolley wire and the electric appliances connected therewith to keep same in repair for defendant."

The answer was a general denial and a plea of contributory negligence.

On a trial before the court and a jury, at the close of the testimony for plaintiff, defendant asked an instruction in the nature of a demurrer to the evidence. The court refused to give this, defendant excepting. Defendant introducing no evidence, the court gave one instruction at the instance of plaintiff and two instructions at the instance of defendant. The jury returned a verdict in favor of plaintiff for $7000, from which, after interposing a motion for new trial, defendant perfected its appeal to the Supreme Court, which latter court, the cause then pending before it, under the provisions of the Act of the General Assembly of this state, increasing the jurisdiction of this court (see Laws 1909, p. 397, now section 3937, R. S. 1909) transferred the cause to this court; from which it was transferred to the Springfield Court of Appeals and thereafter, and before submission to that court, transferred to our court in consequence of the decision of the Supreme Court in the case of State ex rel. Dunham v. Nixon et al., 232 Mo. 98, 133 S. W. 336. The case has been submitted to us on printed briefs and arguments, counsel for appellant also arguing it orally.

The case, as presented to us by counsel, turns on the relation between plaintiff and Dowd. While there is an allegation that the employer, in disregard of its duty, furnished an unsafe place and unsafe means with which to work, the real claim is that Dowd was the representative of defendant, and was the superior of plaintiff, and that plaintiff was working under his orders and direction at the time he received the injury and that the employer (defendant) is consequently liable for the injury suffered. Defendant, on the other hand, contends that plaintiff and Dowd were fellow workman, engaged under a common superintendent in the discharge of their respective duties.

If Dowd and plaintiff fellow workmen, their employer cannot be held to answer for an injury to one of them caused by the negligence of the other, and the demurrer of defendant should have been sustained.

It is said by Judge GANTT, in Parker v. The Hannibal & St. J. Ry. Co., 109 Mo. 362, l. c. 378, 19 S. W. 1119, that any attempt to lay down a definite rule for the determination of the question as to who are and who are not fellow-servants, will be futile and unsatisfactory. "The judge or court," said Judge GANTT, "who would deal in general observations outside of the record under consideration would be treading on dangerous ground, and in a very short time would probably 'find himself hoisted by his own petard.'" This is quoted approvingly by Judge MARSHALL in Grattis v. Kansas City, P. & G. R. Co., 153 Mo. 380, l. c. 393, 55 S. W. 108.

Notwithstanding these observations, our Supreme Court, by many decisions, has laid down certain rules that may be said to be generally applicable to this class of cases. Thus in Moore v. Wabash, St. L. & P. Ry. Co., 85 Mo. 588, it is held (l. c. 594) that, "All are fellow-servants who are engaged in the prosecution of the same common work, having no dependence upon or relation to each other, except as colaborers without rank, under the direction and management of the master himself, or of some servant placed by the master over them." In Murray v. St. Louis Cable & W. Ry. Co., 98 Mo. 573, 12 S. W. 252, Judge BLACK states the rule very briefly and concisely when he says (l. c. 577): "The majority of the courts, it is believed, hold that servants are in a common employment when they are engaged under the same master in the same general business." These cases are cited and the general rule there announced applied in many subsequent cases, as see Schaub v. Hannibal & St. J. Ry. Co., 106 Mo. 74, 16 S. W. 924; Card v. Eddy et al.,

129 Mo. 510, 28 S. W. 979; McCarty v. Rood Hotel Co., 144 Mo. 397, 46 S. W. 172, a case in many of its aspects and facts very like the case at bar; Hawk v. McLeod Lumber Co., 166 Mo. 121, 65 S. W. 1022; Same v. St. Louis & M. R. R. Co., 174 Mo. 53, 73 S. W. 686; McMurray v. St. Louis, I. M. & S. R. Co., 225 Mo. 272, 125 S. W. 751.

In Sherrin et al. v. St. J. & St. L. Ry. Co., 103 Mo. 378, l. c. 384, 15 S. W. 442, it is held that it is an error in consideration of cases involving the relation of employer and employee and those of fellow workmen, to confound the rule applicable to one class with that applicable to another; "the one which requires the master to use due care in furnishing the instrumentalities with which the servant is to do his work, and which is personal to the master, and renders him liable for a failure in that respect; and the other, that a master is not liable to his servant for the negligence of his fellow-servant in the same common employment."

Without going into a discussion of this question, but guided by the principles announced in the foregoing cases, we are of the opinion that under the facts in evidence in this case, plaintiff and Dowd, in performing the acts from which the injury resulted, were fellow-servants. In that view of the case the demurrer to the evidence interposed by defendant should have been sustained.

The injuries to plaintiff were not the direct result of either a defective wire, or of the attempt of Dowd to wipe off the grease from the trolley wire with cotton waste saturated with gasoline, nor from the fact that plaintiff and Cunningham and Dowd were all crowded into the small cage. They resulted from the overturning of the can of gasoline which had been placed in that cage practically by the action of Dowd, Cunningham and plaintiff. Plaintiff turned on the current to send the crane "down the shop," not for

operation in its work, but to enable Dowd to clean off the grease. He was assisting Dowd in that, and was co-operating with him in that work.

It is true that plaintiff says that in moving the crane, he acted under the direction of Dowd; that if Dowd said "move an inch it was move an inch," but a consideration of his testimony as well as of that of his witness Cunningham, does not sustain this in the sense of showing that Dowd was his superior. Giving to the testimony in the case all the inferences that can be drawn from it, as we must do where a demurrer is interposed, we cannot accept these as ultimate facts, or as more than mere conclusions of the plaintiff. They are not the logical inference to be drawn from the facts themselves, as given in evidence by plaintiff and his witness as to the relative situation of these men. When it is said that on a demurrer to the evidence the plaintiff is entitled to the benefit of all conclusions that can be drawn from that evidence, it is meant that this is for the jury, not for the witness. The conclusions of a witness on facts are not to be accepted either by the jury or by the court as facts.

Dowd was not the superior of plaintiff, nor the vice-principal of defendant in cleaning the cable. He as well as plaintiff was under a common superior, Pearson; one it is true as operator of the crane, the other as an electrician, both on this occasion working to a common end, that is to say, the effective movement of the crane. Tested by all the cases, they were fellow workmen, each engaged in a common employment with every opportunity to observe the actions of the other in the performance of that work.

We do not think that the cases of Koerner v. St. Louis Car Co., 209 Mo. 141, 107 S. W. 481, and Burkard v. A. Leschen & Sons Rope Co., 217 Mo. 466, 117 S. W. 35, or Clark v. Union Iron & Foundry Co., —— Mo.——, 137 S. W. 577, particularly relied upon by respondent are applicable to the facts here in evidence.

Taking this view of the case, it is unnecessary for us to go into the other questions presented by counsel.

The judgment of the circuit court is reversed. *Caulfield, J.,* concurs; *Nortoni, J.,* concurs in result only.

## SEPARATE CONCURRING OPINION.

NORTONI, J.—I concur in reversing the judgment for the following reasons only: Though Dowd was an electrician and plaintiff the operator of an electric crane, they should not be considered as employees within the influence of the departmental limitation on the fellow service rule, for, at times and on such occasions as this, their employment centemplated and actually brought them together as colaborers, each operating under the eye of the other. At most, the electrician, Dowd, was one who occupied toward plaintiff a dual capacity of vice-principal, when asserting the authority of the master over him, and of fellow-servant, when performing the labor in which they were both engaged. In such circumstances, it is the character of the act of the person occupying a dual capacity which determines the liability or non-liability of the master for the injury inflicted. If the injury results from a negligent order given by such person while acting as the representative of the master and in his authority, then liability attaches therefor; but if the injury results from the mere negligent act of the employee occupying the dual capacity while acting in the capacity of a laborer after the fashion of his calling, then no liability attaches on account of his negligence, for such is a risk assumed by the injured servant. In this case, the injury resulted from negligent acts of Dowd in going about the task of using cotton waste saturated with gasoline to wipe the trolley wheel at a place where he knew electric sparks were likely to be emitted and in employing an open can

as a receptable for this highly dangerous fluid in such near proximity thereto as to occasion the explosion and consequent hurt. As to this matter, Dowd acted in his capacity of a laborer, wiping the grease from the appliance, while plaintiff was moving the crane ahead in aid of Dowd's effort; in other words, though Dowd at times was possessed of the power of the master which rendered him a vice-principal, plaintiff's injury may not be connected proximately with his exercise of authority in that behalf.