FRANK McMURRAY, Administrator of Estate of DORA NIMMO, v. ST. LOUIS IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

In Banc, February 2, 1910.

1. **PLEADING: Motion to Strike Out: Waiver.**    Defendant waived any error in the ruling of the trial court refusing to sustain its motion to strike out certain portions of the petition, by answering over to the merits and declining to stand upon said motion.

2. **EVIDENCE: Erroneous: Cured by Striking Out.**    Whatever error the court committed in admitting testimony objected to as incompetent and prejudicial, was cured in this case by sustaining a motion to strike it out.

3. **NEGLIGENCE: Master and Servant: Assumption of Risks.** Where the employer's negligence is the proximate cause of the servant's injury, the doctrine of the assumption of risks does not apply. If the master fails to furnish the servant a reasonably safe place in which to work, and the servant is injured in consequence thereof, the injury will not be held to be the result of a risk assumed by him, but will be attributed to the master's failure of duty to his servant.

4. ——: **Contributory: Conflict in Evidence.**    Where the evidence shows that the servant's injury was due either to his own negligence or to that of defendant, and the testimony on that issue is conflicting, then the question of the servant's contributory negligence is for the jury to determine.

5. ——: **Survival of Action to Widow: Fellow-Servants: Carpenter: Train Crew.**    Those only are fellow-servants who, under the direction and control of the master in person or of some servant placed by him over them, are engaged in the performance of the same common work under the same common control. If there is no dependency upon or relation to each other except the bare fact that they work together for the same company without rank, they are not fellow-servants. A car repairer at work on a caboose on a side track, with other carpenters, under the control of a foreman, is not a fellow-servant with the train men of a construction train being at the time used in hauling earth and building up the grade of the switch. Therefore, the widow of the car repairer who was killed through the negligence of said train crew, prior to the Act of 1905, is entitled to sue for his death; and the

prior statute, which permitted only the servant himself to recover where his injuries were due to the negligence of a fellow-servant, and did not transmit said cause of action to his widow, has no application to the case.

6. ———: **Pleading: Two Causes in One Count: Instruction.** Where plaintiff stated two causes of action in one count, one under the statute and the other at common law, the measure of damages not being the same as to each, it is error to submit both causes of action to the jury in one instruction permitting them to return a verdict under either cause, and limiting the recovery to the amount fixed by the statute for the statutory cause. [Distinguishing Brownell v. Railroad, 47 Mo. 239.]

7. ———: ———: ———: **Both Causes Not Submitted.** *Held,* by GANTT, J., with whom VALLIANT, C. J., and LAMM, J., concur, that, while it is bad pleading to combine two distinct causes of action in the same count, a misjoinder is waived by answering over, and it is error to submit two causes in the one instruction, especially where the measure of damages is different, yet it is not necessary to instruct on both causes, but the instruction may be confined to the cause which plaintiff conceives his proof sustains, and the other should be held to have been abandoned if omitted from the instructions, and that was what the instruction in this case amounted to.

8. ———: ———: ———: ———: **Definition Without Direction.** *Held,* by GANTT, J., dissenting, that the instruction in this case contains a definition of the master's common law negligence, in that it stated it was the master's duty to provide a safe place for his servant in which to work, but it did not tell the jury to find for plaintiff if they found the master had failed in that duty, but it submitted for their decision only the negligence denounced by section 2864, Revised Statutes 1899, and that being true the judgment should not be reversed.

9. ———: ———: ———: ———: ———: **No Substantial Error.** *Held,* by GANTT, J., dissenting, that where the only error in the case, if error it was, is a mere inclusion in the instruction of the statement that it was the master's duty to furnish his servant a reasonably safe place to work, without predicating a right to recover thereon, but placing that right on the statutory negligence denounced by section 2864, Revised Statutes 1899; and where plaintiff, who sued for the negligent killing by a railroad of her husband, has since died, and the time is passed in which his minor children can sue, and therefore to remand the cause means its dismissal, the court should heed section 865, Revised Statutes 1899, which prohibits a reversal unless error has been committed materially affecting the merits of the action.

225 Sup—18

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston*, Judge.

REVERSED AND REMANDED.

*M. L. Clardy* and *E. J. White* for appellant.

The court erred in admitting evidence that the rear brakeman of the construction train was in the blacksmith shop, instead of on the rear car, when the deceased was killed, as the law did not require the defendant, in its yard, to maintain watchmen to give notice to its employees of the movement of its cars. Aerkfetz v. Humphrey, 145 U. S. 418; Goodes v. Railroad, 162 Mass. 287; Loring v. Railroad, 128 Mo. 349; Gurley v. Railroad, 104 Mo. 211; Speed v. Railroad, 71 Mo. 303; Evans v. Railroad, 62 Mo. 49. (2) The court erred in refusing the demurrer asked at the close of plaintiff's evidence, and again at the close of the whole case. Renfro v. Railroad, 86 Mo. 302; Whitley v. Railroad, 109 Mo. App. 123; Harris v. Railroad, 40 Mo. App. 255; Harlan v. Railroad, 64 Mo. 480; Hallihan v. Railroad, 71 Mo. 113; Railroad v. Ropp, 11 L. R. A. (N. S.) 413; Devoe v. Railroad, 75 N. Y. S. 136; 70 App. Div. 495; Snellen v. Railroad, 102 S. W. 193; Railroad v. Pool, 160 U. S. 438; Aerkfetz v. Humphreys, 145 U. S. 418; Railroad v. Elliott, 137 Fed. 904; State v. South Baltimore Car Co., 58 Atl. 447; Latremoulle v. Railroad, 63 Vt. 336; Campbell v. Railroad, 2 Atl. 489; Railroad v. Long, 112 Ind. 166; Lynch v. Railroad, 159 Mass. 536; Schaibe v. Railroad, 97 Mich. 318; Railroad v. McGraw, 22 Colo. 363; Railroad v. Haning, 131 Ind. 528; Cypher v. Railroad, 149 Pa. St. 359; Sweeney v. Railroad, 11 Mont. 523; Peterson v. Railroad, 34 N. W. 260; Crowe v. Railroad, 23 N. Y. S. 1100. The deceased, having been killed prior to 1905 and having been a co-employee with those who were operating the cars that struck the caboose that ran over him, there was no cause of

action surviving to the wife of the deceased, and no action exists in her favor. Snellen v. Railroad, 102 S. W. 193; Strottman v. Railroad, 211 Mo. 227. (3) The first instruction, given at plaintiff's instance, was error. 1. In predicating a right of recovery on a failure to furnish a reasonably safe place, to give warning to the deceased and to maintain a watchman, or brakeman, on the rear car on approaching the caboose, as no such duty was placed on the defendant by the common law or by statute. See cases cited under point two, supra. 2. If any such duty to give warning did exist, as to employees, in defendant's yard, in making the duty hinge upon the placing of a brakeman upon the rear car alone, "furtherest" from the engine. 3. In making it negligence on the defendant's part to fail to give warning of the movement of cars, "to said caboose, or the cars immediately in front of it," as no such duty existed, in law, to warn those or any other cars, of the movement of cars in its yard. 4. In predicating a recovery on the ground of the knowledge of the employees in charge of the engine of the danger to the deceased, when the evidence failed to show any such notice on their part. Williams v. Railroad, 96 Mo. 275. 5. In characterizing the acts of such employees as "negligence," without defining the term so used. Magrane v. Railroad, 183 Mo. 119; Casey v. Bridge Co., 114 Mo. App. 65; Johnson v. Railroad, 117 Mo. App. 308. 6. In charging the jury to return a verdict for the fixed sum of $5,000, when the petition and evidence and the same instruction, combined common law acts of negligence with those that would come under the penalty section of the statute. Culbertson v. Railroad, 140 Mo. 35; McKenna v. Railroad, 54 Mo. App. 161; King v. Railroad, 98 Mo. 235; Crumpley v. Railroad, 98 Mo. 34; Rapp v. Railroad, 106 Mo. 423; Elliott v. Railroad, 67 Mo. 272; Holmes v. Railroad, 69 Mo. 536; Schlereth v. Railroad, 96 Mo. 509; Flynn v. Railroad, 78 Mo. 195; Casey v. Railroad, 205 Mo. 721. The sec-

ond instruction, given at plaintiff's instance, was erroneous in telling the jury that the contributory negligence of the deceased, to bar a recovery, must have contributed directly to the injury. If, with the negligence of defendant's employees, it combined to cause the injury, no recovery could be had. Dougherty v. Railroad, 97 Mo. 647; Zumault v. Railroad, 175 Mo. 288; Payne v. Railroad, 129 Mo. 405.

*McNatt & McNatt* for respondent.

(1) The defendant, knowing persons were likely to be on or near the tracks at the point where deceased was killed, was bound to keep proper lookout for their protection, and evidence showing this was not done was proper for the jury's consideration. Fearson v. Railroad, 180 Mo. 208; Rinard v. Railroad, 164 Mo. 270. (2) The demurrer was properly overruled. 1 Thompson's Neg., sec. 461; Lanning v. Railroad, 196 Mo. 674; Rinard v. Railroad, 164 Mo. 270; Fearson v. Railroad, 180 Mo. 208; Smith v. Fordyce, 190 Mo. 1; Porter v. St. Joe Stock Yds. Co., 213 Mo. 372; Geesley v. Railroad, 32 Mo. App. 413; Railroad v. Triplett, 11 L. R. A. (Ark.) 773; Erickson v. Railroad, 5 L. R. A. (Minn.) 786; Railroad v. Lowe, 65 L. R. A. (Ky.) 122; Railroad v. Smith, 101 S. W. (Texas) 453; Hefferman v. Railroad, 182 Mo. 611; Weller v. Railroad, 164 Mo. 180; Tummerna v. Railroad, 71 Mo. 476; Condon v. Railroad, 78 Mo. 567; Mitchell v. Railroad, 122 Mo. App. 50; Russell v. Railroad, 70 Mo. App. 88. (3) The deceased was not a fellow-servant with the train crew, and therefore the action did survive. Moore v. Railroad, 85 Mo. 588; Lanning v. Railroad, 196 Mo. 650; Miller v. Railroad, 109 Mo. 350; Parker v. Railroad, 109 Mo. 390; Schmith v. Railroad, 115 Mo. 87; Erickson v. Railroad, 171 Mo. 647; Koerner v. Car Co., 209 Mo. 141. (4) The first instruction was a submission of the allegations of fact contained in the petition, and told the jury that if the acts therein complained of,

"combined," violated the duty owing to the deceased, and were "negligent," plaintiff should recover. Dickson v. Railroad, 124 Mo. 140; Fearson v. Railroad, 180 Mo. 208; Rinard v. Railroad, 164 Mo. 270; Gessley v. Railroad, 32 Mo. App. 413; Lanny v. Railroad, 196 Mo. 647; Koerner v. Car Co., 209 Mo. 141. (5) If defendant wanted the term "negligence" more fully defined it should have tendered an instruction defining same. Plaintiff's first instruction defined the duty owing deceased, and the jury could not have been misled as to what constituted negligence. Rattan v. Railroad, 120 Mo. App. 270; Sweeney v. Railroad, 150 Mo. 385; Preestmeyer v. Railroad, 102 Mo. App. 518; McGraves v. Railroad, 183 Mo. 119. (6) The only verdict that could have been rendered in this case was $5,000, the amount fixed by statute, because the death was the result of negligence of the employees "whilst running, conducting or managing any locomotive, car or train of cars." R. S. 1899, sec. 2864; Casey v. Railroad, 205 Mo. 721; Buddenberg v. Railroad, 108 Mo. 394. (7) The second instruction, given by the court, was a correct definition of the doctrine of contributory negligence, and is an exact copy of one approved by this court. Weller v. Railroad, 164 Mo. 194.

WOODSON, J.—This cause was submitted at the last term of this court to Division Number Two. An opinion was handed down affirming the judgment of the circuit court in favor of the plaintiff. Defendant filed therein a motion for a rehearing, also one asking that Division to transfer the cause to Court in Banc. The latter motion was sustained, and the cause is here for disposition on its merits.

The petition is in the following words and figures (formal parts omitted):

"For her cause of action against the defendant, plaintiff states that the defendant is a corporation duly organized and existing under the laws of the

State of Missouri, and as such is and was at all times hereinafter mentioned, the owner, and operating certain lines of steam railway, in the State of Missouri, and among other lines, is and was at the times of the grievances herein complained of, constructing a line of railroad through the county of Lawrence, in said State of Missouri, and upon which it was at all times herein mentioned operating construction trains with steam locomotives and flat and other cars used for hauling its dirt from a deep cut east of the city of Aurora, Missouri, to fill in and construct a fill or 'dump' just west of said city.

"That in order for said construction trains to meet and pass each other in their work, defendant had constructed and caused to be laid a 'spur' switch, just east of said city, about one thousand feet long, where said trains often took siding for those running in opposite direction to pass them. Said spur was connected with the main track at its western terminus, where it curved shortly and sharply to the south, thence running in an easterly direction parallel to the main line, terminating at the east end and on an elevation or 'dump,' while the main track went into a cut and continued in an eastern direction.

"That by reason of the sharp curve in said track or switch, and the existence at the time of the several mining structures, and piles of rock, gravel and waste from the mines and mining lands along and through which said railroad bed was constructed, persons working upon and near said spur switch could not see the main line of said railroad, nor the approaching trains operating thereon, west of said switch connection, nor until said trains had passed the curve in said spur switch.

"Plaintiff further states that she is the widow of Albert P. Nimmo, deceased, who was killed by the defendant's cars, so operated on said railroad, about the

. . . . day of November, 1904, and as such widow is entitled to sue herein and to prosecute this action.

"That deceased, Albert P. Nimmo, as aforesaid, was an employee of said defendant at said date, as a car-repair carpenter, and as such, at the time of his death was working for the defendant, and under its direction in repairing its car, known as a caboose, which was by the defendant placed upon the said spur switch above described, for purpose of being repaired; that said caboose was so placed and left upon said switch, near its eastern terminus, in order that it might not be struck or moved by the said construction trains taking siding thereon.

"That it was the legal duty of the defendant, while said deceased was so employed by it, in repairing said caboose, to use reasonable care and caution to furnish him a reasonably safe place to work, regard being had to the kind and nature of his employment, and to see that he was not subjected to unnecessary dangers, without informing or warning him of the same, and to see that unnecessary obstructions were not placed by it so as to obstruct his view from approaching trains, which might cause his injury, and to use reasonable care in running their said trains in and upon said spur switch, so as not to have cars come against or strike said caboose, so being repaired by deceased and other carpenters, with such force as to suddenly knock or shove it, and thereby injure them or subject them to danger without notifying or warning them of such fact, while they were so engaged with their duty in repairing said caboose, and also to give them reasonable warning by signals or otherwise of the approach of said trains when they were so being sidetracked upon said spur switch, where said deceased and other carpenters were at work on said repairs.

"That in violation of its said duty to deceased, defendant had carelessly and negligently placed upon said spur switch, immediately in front and against

said caboose, a certain box car together with other cars, and left them remaining there so that they obstructed the view of the deceased, his foreman and other carpenters so engaged at work on said caboose, and prevented them from seeing the approach of a train on said switch.

"That on said ———— day of November, 1904, and while the deceased, Albert P. Nimmo, husband of the plaintiff, was so engaged in the discharge of his duties to defendant, as such its employee, in repairing said caboose, and while the defendant well knew, or might have known by the exercise of reasonable care, that the deceased and others were so engaged at that time, and were in danger should said caboose be struck or moved, and while deceased, under the direction of defendant's foreman, was in the act of placing in said caboose at the rear or east door thereof a load of lumber, it being the only convenient opening for the reception of materials and lumber, and the one where he was directed to place them, and where his view was entirely obstructed from the track west of said caboose and any approaching train upon said track, and without knowledge on his part that any such train was approaching, the defendant wholly disregarding its duties to deceased, negligently backed a train of construction cars, with its locomotive steam engine, operated by its agents and servants in and upon said spur switch, at a negligently rapid speed, and carelessly and negligently failed to have any one on or near the rear car furtherest from said engine, to regulate the speed of said train, or to give warning of its approach in case of danger, either to persons or to the engineer in charge of said engine, and negligently failed to give any warning whatever of its approach to said caboose or the cars immediately in front of it, by sounding the whistle or bell or any other warning, and negligently shoved said train upon and against said cars in front of said caboose with such violent

force that it drove them violently against said caboose, while the deceased was so engaged in placing said boards or lumber therein, and while he was using reasonable care and caution, and without fault or negligence on his part, the said caboose was thereby negligently driven, knocked and violently shoved backward to a great distance, upon, against and over the deceased, Albert P. Nimmo, so that the wheel of said caboose caught him between it and the rail of said track, thereby severing his head from the rest of his body, causing instant death.

"By reason of which, plaintiff is damaged in the sum of five thousand dollars.

"Wherefore plaintiff prays judgment against defendant for the said sum of five thousand dollars, together with her costs in this action."

Formal parts omitted, the answer was as follows:

"The defendant, for answer to the plaintiff's petition, admits the incorporation of the defendant, as alleged, admits the employment of the deceased, in the capacity of a car-repairer and admits that, at the time of his death, he was engaged in carrying lumber to place the same in a caboose, upon the defendant's railroad track, east of the city of Aurora, in Lawrence county, Missouri, but the defendant denies each and every other allegation in the plaintiff's petition contained.

"Defendant denies that the death of the deceased, Albert P. Nimmo, was caused by the negligence of the defendant, but alleges that the death of said Albert P. Nimmo was caused by his own contributory negligence and was due to a risk incident to the business in which he was employed and was assumed by him upon entering into the employment of the defendant.

"Wherefore, having fully answered, the defendant asks to be discharged, with its costs."

The reply was a general denial of the new matter stated in the answer.

The record discloses the following facts:

Albert P. Nimmo, at the time of his death, was the lawful husband of Dora A. Nimmo, the plaintiff. He was killed by one of defendant's trains in the manner following. He was a carpenter by trade, and he and several others had been employed by the defendant for six weeks or two months prior to his death in that capacity. During most of that time he had worked in the vicinity of the switch and sidetrack on which he was killed, about a mile east of Aurora, Lawrence county. The main track, at that place, ran east and west, and two switches on the south thereof practically paralleled it for a distance of two thousand feet; the north one was on a grade some three or four feet above the surface of the earth, and the south one was on a level with the surface. The junction of these switches with the main line was at the west end thereof. Nimmo was killed near the east end of the north switch.

Up to the date of Nimmo's death defendant had been constructing a line of railroad through said county. During this time two construction trains, each consisting of an engine and a string of flat cars, were engaged in hauling dirt from a cut east of Aurora, and were running these trains to and from the cut to the switch, where Nimmo was killed. There they deposited the loads of dirt and took out the empties. The south switch had a string of cars standing on it, which, together with a mining plant standing near the right of way, somewhat obstructed the view of a footman standing on the east end of the north switch so that he could not see a train approaching from the west until it left the main track and was coming onto said switch or spur. On the east end of said north switch stood a caboose and some box cars in front or west of it; and on the day of his death Nimmo was carrying lumber on his shoulder from the junction of the switches with the main line back, east, to this caboose. He and other

carpenters had been working in that vicinity for several days.

These construction trains were pushed in upon this north sidetrack every thirty or forty minutes during all hours of the day. Prior to his death someone had been stationed at the west end of the switch, to notify the train crews of these construction trains that the caboose or other stationary cars were being repaired by the carpenters; but upon this unfortunate occasion no one had been stationed there for that purpose; and the evidence was conflicting as to whose duty it was to station the man there—the company's or said carpenters'.

Henry Giricke, a co-employee of Nimmo, was the only eye-witness to the accident, who described the surroundings and what he and deceased were doing just prior to and at the time of the injury, substantially, as follows: Just west of and in front of the caboose that was being repaired were six flat cars and a box car. Some lumber necessary for repairing the caboose had been unloaded some fifteen hundred feet west thereof, on the south side of the switch, and just before Nimmo was killed he and Giricke had been carrying, on their shoulders, some of that lumber back, east, to the caboose.

Giricke testified that the deceased and himself each took a load of the lumber on their shoulders with their backs toward the west end of the switch and carried it east, along the south side of the switch, until they reached the caboose. Nimmo was some thirty feet in front of Giricke, and the deceased passed along the south of the standing cars and around to the east end of the caboose, and was in the act of pushing his load of lumber into the east end of the caboose when the same was struck by the car immediately west of it, which had, in turn, been hit by one of the construction trains backing in on the switch. In consequence thereof Nimmo was knocked down by the caboose, and

the wheels thereof passed over him and instantly killed him.

Neither Giricke nor Nimmo, according to his testimony, stopped, looked or listened for an incoming construction train after they shouldered the lumber up to the time of the latter's death. The physical facts, however, show that deceased had turned around, practically facing the direction of the approaching train, in going from the south side of the switch up to the east end of the caboose, into which he was placing the lumber. The evidence tended to show that had deceased looked as he turned to go up to the caboose he could not have seen west of the caboose more than fifteen car lengths, or about five hundred and fifty feet.

The evidence showed that not only would the box cars standing on the switch east of the caboose obstruct their view of trains backing in on the switch, while they were passing along the south side thereof and around to the east end of the caboose, but that there was also a string of cars standing on the south switch, which, together with the several mining structures and piles of rock, gravel and other waste matters from the mines, standing and piled along and just beyond defendant's right of way, obstructed one's view of the construction trains while he and deceased were passing around said cars and caboose, standing on the north switch. The following diagram will show the location of defendant's main line and north switch track at the place where Nimmo was killed, also show the location of the several mining structures and piles of rock, gravel and waste.

Part of "WHITE RIVER ROUTE" S.L.IM.&S.Ry.
Showing Location of Main Line, and Side Track
on, "BONANZA" Hill, EAST of AURORA, Mo.

JUNE 26, 1905.

When the deceased and Giricke went down to get the lumber they looked down the main track, a mile or more, towards town and saw no train coming from that direction. The train struck the cars attached to and in front of the caboose with such force that it knocked it back two car-lengths, shoving the caboose over the deceased and severing his head from his body. At the time of the killing the regular conductor, Douglass, was not on the train, but McEwen, one of the brakemen, was acting as conductor and as such had control of the train. On the preceding trip, from forty minutes to one hour before the killing, this same crew had been in on the siding, and McEwen, the brakeman, had set in the dead cars and coupled the box car onto the caboose, the west door of which was open. The witness Cash testified that McEwen had a conversation with him on the previous trip, and knew that he was working in the caboose, but McEwen denies the conversation.

Defendant's evidence tended to show that during the entire period that said Nimmo had worked for it, it had the following rule in effect, viz.: "Rule 26. A blue flag by day and a blue light by night, displayed at one or both ends of an engine, car, or train, indicates that workmen are under or about it. When thus protected, it must not be coupled to or moved. Workmen will display the blue signals and the same workmen are alone authorized to remove them. Other cars must not be placed on the same track so as to intercept the view of the blue signals, without first notifying the workmen." And the defendant's evidence also tended to prove that said deceased knew of the rule, and that it was in effect, and had talked about it with his co-employees.

Plaintiff's evidence tended to show that no "flags" or blue lights had ever been used by these car-repairers; that none had ever been furnished them by the company, nor their foreman Mackey, for use, and

the witness Cash, who had been working for appellant longer than the deceased, had never heard of any rule requiring their use, and it was the foreman Mackey's duty, not the deceased's, to furnish the flags. All of the train crew testified in effect that the rule enjoining the use of flags by car-repairers had never been enforced at that place, but Mackey had always kept a man about the shop and warned them by word of mouth.

Besides the widow of deceased, the plaintiff offered only three witnesses. William Cash, a carpenter, who was inside the caboose but did not see the accident, testified to the location of the cars, mining structures, dumps, etc.; that no whistle or bell was heard by him, and that he was thrown down by the force of the blow when the caboose was struck; D. Cummings, a blacksmith, who did not see the accident, but saw no one on the car farthest from the engine and heard no whistle or bell; and one A. F. Luck, who was going to his work, along the yard of the defendant, where Nimmo was killed. He saw Nimmo when the deceased started with the load of lumber, 1,500 feet west of the caboose, and then he passed out of his vision, and he heard no whistle, but saw the train and engine, although walking in the same direction Nimmo was walking; he also saw the cars strike the caboose, and then heard that Nimmo had been killed.

At the close of the plaintiff's case, and again at the close of all the evidence introduced in the case, the defendant asked an instruction in the nature of a demurrer to the evidence, both of which the court refused to give, and it duly excepted.

At the request of counsel, the court instructed the jury for the plaintiff as follows:

"1. The court instructs the jury that the deceased, Albert P. Nimmo, was at the time of his death an employee of the defendant, and as such employee it was the defendant's legal duty to use reasonable care

in furnishing him a reasonably safe place to work, regard being had to the kind and nature of the employment, and to see that he was not subjected to unnecessary and unreasonable danger without informing or warning him of the same; and if you find and believe from the evidence, that on or about the ———— day of November, 1904, while said deceased was engaged in his duties as employee of defendant, in placing a load of lumber in a certain caboose of defendant on its spur or switch east of Aurora, Missouri, the defendant by its agents and servants, negligently backed a train of construction cars, with its locomotive steam engine, operated by its agents and servants in and upon said spur or switch, at a negligently rapid speed, and carelessly and negligently failed to have any one on or near the rear car furtherest from said engine, to regulate the speed of said train, or to give warning of its approach in case of danger, either to persons, or to the engineer in charge of said engine and negligently failed to give any warning of its approach to said caboose, or the cars immediately in front of it, and negligently shoved said train upon and against said cars in front of said caboose, with such violent force that it drove them violently against said caboose, and while said deceased was so employed and was using reasonable care and without fault or negligence on his part, said caboose was caused to be negligently driven, knocked and violently shoved backward, upon, against and over the deceased, so that the wheel of said caboose caught him between it and the rail of said track, thereby severing his head from the rest of his body, causing instant death; that the servants and employees running and operating said construction train, knew or by the exercise of reasonable care should have known, that said deceased and others were engaged in working upon said caboose, and very likely to be in danger should said caboose be moved without giving said deceased and workmen warning or notice of same, then

your verdict should be for the plaintiff in the sum of five thousand dollars, provided you further find that at the time of the death of said Albert P. Nimmo, he was the husband of Dora A. Nimmo, the plaintiff.

"2. The court instructs the jury, that negligence on the part of the deceased which will prevent the plaintiff from recovering in this action, must be such as directly contributed to his injury, and consist of the want of ordinary care.

"Ordinary care means that degree of care which may be reasonably expected of ordinarily prudent persons in the situation of plaintiff's husband at and just before the time the accident occurred, and in determining whether the deceased was using such care, you should take into consideration all the circumstances surrounding him at the time.

"3. The court instructs the jury that even though you may believe from the evidence that there were no flags or other signals put out as required by the rules of the defendant read in evidence, yet if you further believe from the evidence, that the agents and employees operating the construction train in question knew at the time of the injury or by the exercise of ordinary care could have known that the said deceased or other workmen were engaged in repairing the caboose in question and were in danger should the same be violently struck, then a failure to comply with said rule, will not prevent plaintiff from recovering for that reason."

To the giving of which instruction the defendant duly excepted.

And the court of its own motion gave the following instruction:

"4. The court instructs the jury that no duty exists on the part of the railroad company to maintain a lookout or watchman to notify its employees of approaching trains or cars upon its tracks, where such

cars are customarily run. And although you may believe from the evidence in this case that no brakeman or other watchman was placed upon the cars which struck the caboose that caused the death of the deceased, at the time of his injury, this fact alone would not warrant a recovery against the defendant, or exempt the deceased from the obligation upon his part to avoid injury from such cars.''

On motion of defendant the court gave the following instructions:

''5. The court instructs you that if you believe from the evidence that prior to the injury and death of the deceased, Albert Nimmo, the car-repairers of the defendant, when at work on the switch or side track where the caboose was located that caused his death, had been accustomed to place a watchman to notify the operatives of its trains, and that at the time of said injury and death no such watchman was stationed to notify the operatives of the engine and train of cars that ran against the caboose which injured him, then your verdict will be for the defendant.

''6. The court instructs you that if you believe from the evidence in this case that at and prior to the injury to the deceased, Albert Nimmo, he and the other car-repairers of the defendant were accustomed to work upon cars set in upon the track where the caboose was standing which caused his death, and that such deceased and his fellow-servants, such car-repairers, knew or ought to have known that other cars were apt to strike such car, or caboose, and, with such knowledge, or means of knowledge said deceased voluntarily went upon said track, at a place where such cars were apt, at any moment, to come in contact with such caboose, then your verdict will be for the defendant.

''7. The court instructs you that if a party voluntarily places himself in a place of danger, he is required to use a sufficient degree of diligence to protect himself from injury, and for a failure to use such dili-

gence he is guilty of contributory negligence; and if you find from the evidence in this case that the deceased, Albert Nimmo, voluntarily went behind the caboose, or at the east end of said caboose, at a place where cars were accustomed to be shifted upon said track, where said caboose was located, at irregular intervals, and that said Albert Nimmo, with knowledge of the fact that such cars were apt to strike said caboose, voluntarily went behind the east end of said caboose at a place where he could not see such cars so shoved or switched upon said track, then your verdict will be for the defendant.

"8. The court instructs you that if you believe from the evidence that any witness has wilfully sworn falsely as to any material fact you are at liberty to disregard the whole or any part of such witness's testimony."

And the following instructions were also asked by the defendant and refused by the court, and to the refusal of each said instruction, the defendant duly excepted, viz.:

"1. The court instructs you that no duty exists on the part of a railroad company to maintain a lookout or watchman to notify its employees of approaching trains of cars upon its tracks, where such cars are customarily run. And although you may believe from the evidence in this case that no brakeman or other watchman was placed upon the cars which struck the caboose that caused the death of the deceased, at the time of his injury, this would not warrant a recovery against the defendant nor exempt the deceased from the obligation upon his part to avoid injury from such cars.

"2. The court instructs you that even though you may believe from the evidence in this case that the deceased and other car-repairers of the defendant, were not accustomd to use a flag to warn operatives of its trains of their presence on or near stationary cars, this

will not exempt them from the duty to use such flags, unless you also find from the evidence that knowledge of the violation of such rule has been brought home to the defendant's officers or agents who would have had authority to waive the enforcement of such rule, passed and adopted and promulgated for the protection of its employees in such work of repairing cars.

"3. The court instructs you that if you believe from the evidence in this case that the defendant had a rule requiring car-repairers to place a flag, in a prominent position, at one or both ends of a stationary car, when at work upon stationary cars, to notify agents in charge of cars in operation on its tracks, of the dangerous position of such car-repairers, and that at the time of the injury to the deceased, Albert Nimmo, he had notice of such rule, and no flag or other notice of warning was given to such operatives of its engines and cars, then your verdict will be for the defendant.

"4. The court instructs you that an employer of men is never required to take more precautions for the protection of its employees than such employees are required to use for their own protection. If, therefore, you believe from the evidence that the deceased, Albert Nimmo, at the time of his death, was standing on the defendant's railroad tracks, at a place where he could not have been seen by the engineer or operatives of its train, which was caused to be run upon the track, where he was standing, and that such operatives of the said train and engine did not know of his position upon said track, then the defendant is not negligent, and your verdict should be for the defendant.

"5. The court instructs you that if you believe from the evidence in this case that the deceased husband of the plaintiff voluntarily went upon the defendant's railroad track, at a place where he was liable to be struck by defendant's cars, without notice to the

agents of the defendant, in charge of its engines and cars, then your verdict must be for the defendant.

"6. The court instructs you that in approaching or crossing or standing upon a railroad track, where cars are apt to injure a person, or employee, he is required to stop and look and listen for the approaching cars before stepping upon said railroad track, and if such person or employee fails to stop and look and listen for approaching cars, then no recovery can be had for his death or injury by being hurt from such cars. And in this connection, you are instructed that the duty to listen is emphasized if the approach to said railroad track is at a place where cars cannot be seen, and no one in the possession of his faculties, as a reasonably prudent person, is justified in placing himself upon a railroad track, where cars are apt to be set in motion, at a place where cars cannot be seen; and if you believe from the evidence that said deceased voluntarily placed himself in a position where he could not see such cars, liable at any time to be shifted upon the track where he was at work, and as a result thereof he was killed by such cars being shifted upon said track and caused to strike the caboose where he was at work, then your verdict will be for the defendant.

"7. The court instructs you that if you believe from the evidence in this case that at the time of his death the deceased, Albert Nimmo, had placed himself upon the railroad track of the defendant at a place where it was accustomed to run its engines and trains of cars, and that said Nimmo, before placing himself upon said track, had caused no notice of his position to be given to the operatives of such engine or cars, and that he placed himself upon said railroad track at a place where he could not be seen by the persons in charge of said engine or cars, then your verdict must be for the defendant.

"8. You are instructed that if you find from the evidence that at the time of the injury and death of

deceased husband of the plaintiff, with knowledge of
the rule requiring a blue flag on one or both ends of
stationary cars, where car-repairers were engaged at
work in or about such car, said deceased and his co-
employees adopted another precautionary measure,
that a man should always be stationed at the switch to
notify the operatives of the defendant's train, when
such car-repairers were working in or about such sta-
tionary cars, then it was the duty of the deceased and
his co-employees to see that such man was so stationed
to give such notice; and if you believe that on the oc-
casion of the injury and death of said deceased, no one
was stationed at such switch to give such notice to the
operatives of the train, and that they had no notice of
the fact that deceased was at work near said car, then
your verdict must be for the defendant.

"9. The court instructs the jury that if you be-
lieve from the evidence that the defendant had a rule
requiring car-repairers, when at work on or about sta-
tionary cars, to place a blue flag on either end of such
car, to give notice to the operatives of trains of their
position, and that at the time of the injury to the de-
ceased he had knowledge of such rule, and no flag or
other notice or warning was given, if the jury find that
the violation of such rule occasioned or contributed to
his death, then your verdict will be for the defend-
ant."

The jury found for the plaintiff and assessed her
damages at the sum of five thousand dollars, and judg-
ment was rendered accordingly thereon.

In due time counsel for defendant filed the follow-
ing motion for a new trial (Formal parts omitted):

"The defendant moves the court to set aside the
verdict and judgment in the above entitled cause and
to grant the defendant a new trial, and for grounds
why said verdict and judgment should be set aside, the
defendant presents to the court.

"1st. That the verdict is contrary to the instructions of the court.

"2nd. That the verdict is against the evidence and contrary to law. ·

"3rd. That the verdict is against the weight of the evidence.

"4th. That the verdict is the result of passion and prejudice and was prompted by charitable impulses and was not based upon the evidence in the case or the law as declared in the court's instructions.

"5th. That the court erred in excluding competent and legal evidence offered by the defendant.

"6th. That the court admitted incompetent and illegal evidence on the part of the plaintiff, over the objections and exceptions of the defendant.

"7th. Because the court erred in giving instructions numbered 1, 2 and 3, on the part of the plaintiff, and in giving each of said instructions, over the objections and exceptions of the defendant.

"8th. Because the court erred in giving instruction numbered four of its own motion.

"9th. Because the court erred in refusing instructions numbered 1, 2, 3, 4, 5, 6, 7, 8, and 9, and in refusing each of said instructions asked by the defendant.

"10th. Because the court erred in refusing the peremptory instruction to find the issues for the defendant asked at the close of the plaintiff's evidence.

"11th. Because the court erred in refusing the peremptory instruction asked by the defendant, at the close of the whole case.

"12th. Because the court erred in refusing to withdraw incompetent remarks of the plaintiff's counsel from the jury, on timely objections thereto, and in permitting such incompetent remarks to go to the jury, uncorrected, over the defendant's exceptions, viz.: all remarks that counsel John L. McNatt made in his address to the jury that the defendant's witnesses had

not sworn truly, because they knew the continuance in the defendant's employment depended upon their testimony; all remarks by same counsel that such testimony of said witnesses had been coached, and that they had been told what to testify to, as such remarks were outside the record in the case and were an appeal to the passions and prejudices of the jury; also all remarks made by the counsel Carr McNatt, objected to and excepted to by the defendant, that it "might be that the defendant's witnesses placed a gloss upon their evidence, in order to hold their jobs," as such remarks were outside of the record and were an appeal to the prejudices of the jury.

"13th. Because the court erred in responding to a question from the jury, after their retirement, if it was possible for them to find a verdict for a less sum than $5,000, in sending the jury word, by the deputy sheriff, without the consent of the counsel, that they could not find a verdict for a less sum, for them to read their instructions, as such remark from the court, thus communicated to the jury, was calculated to compel them to agree upon a verdict, against the judgment of the individual preferences of different jurymen.

"14th. Because the court erred in thus instructing the jury that the sum of $5,000 was the lowest sum for which they could return a verdict in the case.

"Wherefore, defendant asks the court to set aside the verdict and to grant it a new trial, for which it will ever pray."

On the hearing and support of defendant's motion for a new trial, the defendant's counsel introduced the following evidence.

Frank Burns, having been duly sworn, was called as a witness and testified as follows:

"By Mr. White:

"Q. You are the deputy sheriff of this court? A. Yes, sir. Q. After the jury retired in the case of Dora Nimmo v. St. Louis Iron Mountain & Southern Ry. Co.,

did the foreman ask you any questions? A. Yes, sir.
Q. What questions did he ask you? A. He called me
to the door, came on the outside and asked me if they
could find for anything less than $5000. I told him I
was no attorney, I could not tell him. Q. Then what
did you do? A. I came and asked the court the ques-
tion, and he told me to tell them to read the instruc-
tions. Q. What else did the court do? A. When I
first ask him the question, he said go back and tell
them to read the instructions. Q. Did you tell the
foreman? A. He said, 'What did the court say?' I
said, He said, 'Read your instructions.' He asked me
the second time what did he say about the $5000. I
said he told you to read your instructions.

"Cross-Examination by Mr. McNatt:

"Q. He asked you to go get instructions from
the court? A. No, he didn't ask me to get any in-
structions at all. When he asked me I told him I could
not tell him; I said I would go ask the court, I was no
lawyer. Q. You went back and told him the court said
read his instructions? A. Yes, sir.

"By Mr. White:

"Q. When he asked you the second question? A.
I said, 'No, read the instructions.' He asked me what
he said about finding for $5000 or less. I said he told
me to tell you to read the instructions."

Said motion for a new trial being heard by the
court was overruled. To which action of the court in
overruling the motion for new trial, and refusal to give
it a rehearing in this cause, defendant duly ex-
cepted at the time, and does now except. And after-
wards, during said term, to-wit, on the 14th of No-
vember, 1905, defendant filed its motion in arrest of
judgment, which was in the usual form, and was by the
court overruled, to which ruling defendant duly ex-
cepted. Thereupon defendant presented to the court
an affidavit for an appeal, and appeal of said cause
was allowed to this court.

Since this appeal was taken, Dora A. Nimmo, the plaintiff in the case, died, and the cause was duly revived in this court in the name of Frank McMurray, the administrator of her estate.

## OPINION.

I.  The first insistence presented by counsel for appellant is, that the circuit court erred in overruling its motion to strike out certain portions of the petition, therein specified, which reads as follows (Formal parts omitted):

"Now comes the defendant and moves the court to strike out from the plaintiff's petition, the following averments, to wit:  To strike from the last three lines of the first page of said petition and the first line on the second page thereof, the following words: 'And the existence, at the time, of the several mining structures and piles of rock, and gravel and waste from the mines, and mining lands, along and through which said railroad bed was constructed.'  For the reason that there is no allegation that the defendant, in any way, is responsible for said piles of rock, gravel or waste dirt from the mines or that it caused same to be piled near its railroad roadbed, or that it has any right to remove or interfere with the same, which allegation would be necessary to show any wrongful act, default or neglect in regard thereto on the defendant's part.

"And the defendant also moves the court to strike out and eliminate the following words on the second and third pages of said petition, being all the third paragraph on page two and the first and second paragraphs on page three, of said petition, containing the following words, to-wit: 'That it is the legal duty of the defendant, while said deceased was so employed by it, in repairing said caboose, to use reasonable care and caution to furnish him a reasonably safe place

to work, regard being had to the nature and kind of. his employment, and to see that he was not subjected to unnecessary dangers, without informing or warning him of the same, and to see that unnecessary constructions were not placed by it, so as to obstruct his view from approaching trains, which might cause his injury, and to use reasonable care in running their said trains in and upon said switch, so as not to have cars come against, or strike said caboose, so being repaired by said deceased and other carpenters, with such force as to suddenly knock or shove it and thereby injure them, or subject them to danger, without notifying them of such fact, while they were so engaged in their duty in repairing said caboose, and also to give them reasonable warning, by signals or otherwise, of the approach of their trains, when they were so being side tracked upon said spur switch, where said deceased and other carpenters were at work on said repairs.   That in violation of its said duty to deceased, defendant had carelessly and negligently placed upon said spur switch, immediately in front of and against said caboose a certain box car, together with other cars, and left them remaining there so that they obstructed the view of the deceased, his foreman and other carpenters so engaged, and prevented them from seeing the approach of said train on said switch.' For the  reason that the negligent acts charged against the defendant, in the next paragraph of said petition are specifically set out and such general averments of the legal duty of the defendant are but pleading matters of law and not facts.   Such averments are superseded and rendered superfluous and redundant and irrelevant by the specific allegations of negligence in said petition set forth and eliminated from said petition and not read to the jury, because wholly incompetent and irrelevant.

"And also the following on page three, of said petition, viz.: 'It being the only convenient opening

for the reception of materials and lumber,' for the reason that such clause pleads evidential facts, not material to the cause of action alleged.

"Wherefore, defendant moves the court to strike out all such improper and incompetent allegations from the plaintiff's petition."

Which said motion was by the court overruled, to which defendant duly excepted.

Whatever merit, if any, there was stated in said motion to strike out was, by appellant, waived by answering over to the merits and declining to stand upon the motion. [O'Brien v. Railroad, 212 Mo. 59; White v. Railroad, 202 Mo. l. c. 561-2.]

II. It is next contended that "the court erred in admitting evidence that the rear brakeman of the construction train was in the blacksmith shop, instead of on the rear car, when the deceased was killed, as the law did not require the defendant, in its yard, to maintain watchmen to give notice to its employees of the movement of its cars."

The record discloses the fact that counsel for appellant objected to the admission of that evidence, which objection was by the court overruled. The witness then answered: "McEwen, the man that is supposed to ride the rear end of the train, was in the blacksmith shop, and Sam Osborn was by the side of the siding, when the report came in that Nimmo had been killed; no conductor on the train."

Counsel for appellant then moved the court "to strike out the evidence, for the reason it is incompetent and irrelevant and prejudicial to the defendant's case. And we except to the remarks of counsel in the conversation to the jury by using the words 'very, very,' and ask it to be withdrawn from the jury." The court sustained said motion and request to strike out the answer of the witness and the remarks of the counsel in the following language: "The testimony

is incompetent, I think, and Mr. McNatt don't need to make such remarks until he goes to arguing his case.''

It is apparent from the foregoing proceedings and rulings of the court that whatever error it committed, if any, in the admission of that testimony was cured by striking it out upon the request of counsel for appellant.

III. The refusal of the trial court to give appellant's instruction in the nature of a demurrer to respondent's evidence, asked at the close of his case, and renewed at the close of the introduction of all the evidence of the case, is complained of as error.

Appellant's position is that the evidence shows Nimmo's death was attributable to risks incident to his employment, coupled with the want of ordinary care on his part and that of his fellow-servants, and for that reason respondent was not entitled to a recovery, and, consequently, the demurrer should have been sustained. Many authorities are cited in support of that position, among others are the following: Renfro v. Railroad, 86 Mo. 302; Whitley v. Railroad, 109 Mo. App. 123; Harris v. Railroad, 40 Mo. App. 255; Harlan v. Railroad, 64 Mo. 480; Hallihan v. Railroad, 71 Mo. 113.

The law is well settled in this State, that where an employee is injured as a result of a risk incident to his employment, or through the concurring negligence of himself and that of a fellow-servant, he is not entitled to recover from the employer the damages sustained in consequence of the injury. [Burnes v. Railroad Co., 129 Mo. 41.]

But as regards the first proposition, that rule never applies to a case where the evidence shows that the injury was attributable to the negligence of the employer, for the reason that where his negligence is the proximate cause of the injury, it can no longer be

truthfully said the injury was attributable to an assumption of risk.

This same question was presented to this court in the case of George v. St. Louis and San Francisco Railroad Co., *post*, p. 364. After a careful consideration of the authorities, the court there announced the rule in the following language: "However, that rule will not prevent a recovery in this case without it is first shown that the injury received by respondent, was incidental to some risk assumed by respondent. The rule itself so states, and that statement suggests the question, were his injuries the result of any such risks? In answering that question it should be borne in mind that the servant never assumes risks occasioned by the carelessness or negligence of the master. [Henry v. Railroad, 109 Mo. 488, l. c. 494; Brady v. Railroad, 206 Mo. 509; Zeis v. St. Louis Brewing Assn., 205 Mo. 638; Curtis v. McNair, 173 Mo. 270, l. c. 283; Holloran v. Foundry Co., 133 Mo. 470.] That rule is founded upon the well-known doctrine which requires the master to furnish the servant a reasonably safe place in which to work. [Burnes v. Railroad, 129 Mo. l. c. 51; Curtis v. McNair, supra; Holloran v. Foundry Co., supra.] And all the authorities, text-writers and courts unite in holding that if the master negligently fails to furnish his servant such a place, and the latter is injured in consequence thereof, then it cannot be successfully maintained that such injury was the result of a risk assumed by him; but, upon the contrary, such injury must be attributed to the dereliction of duty on the part of the master, and he is liable in damages therefor."

In the statement of the case, we set out quite fully what the evidence tended to show the facts were; and by a careful reading of that statement, it will be seen there was evidence which tended to show appellant's negligence caused Nimmo's death, and that it was not attributable to any risks incident to his employment.

Not only that, but after a most careful reading of this entire record, we have been unable to discover any evidence therein which tends to show Nimmo's death was caused by any risk which was incidental to his employment, nor has counsel called our attention to any such testimony, consequently, we conclude none such was introduced at the trial—at any rate, if so, it was not preserved in this record.

And as regards the second question before suggested, it is but the statement of the old familiar doctrine in another form, that contributory negligence of the plaintiff will bar a recovery on his part. And by reading the evidence in this case, there is no escape from the conclusion that Nimmo's death was due either to his own negligence or that of the appellant, but the evidence upon that question was conflicting. The rule of law is, that where the evidence upon a question is conflicting, then it is one for the jury to determine, and a demurrer will not lie. [Hach v. Railroad Co., 208 Mo. l. c. 601; Holmes v. Murray, 207 Mo. l. c. 417; Lange v. Railroad, 208 Mo. l. c. 474; Beave v. Railroad, 212 Mo. l. c. 354; Meily v. Railroad, 215 Mo. l. c. 584.]

We are, therefore, of the opinion that the court correctly overruled the demurrer to the evidence.

IV. The record discloses the fact that Nimmo was injured and killed prior to the passage of the Act of 1905 (Laws of 1905, p. 135) transmitting to the widow and minor children the right to sue for and recover the damages sustained by them for the death of her husband and their father, in the causes therein specified.

Under that state of facts counsel for appellant insists that whatever cause of action, if any, Nimmo himself may have had against it abated with his death, and did not survive to his widow or children, for the reason assigned, that if he was negligently injured

by appellant, it was done through negligence of his co-employees in charge of the train which caused his death.

If Nimmo was a fellow-servant with those who were responsible for his injuries, then his cause of action upon his death, neither at common law nor under sections 2864-2865, Revised Statutes 1899, nor by the Act of 1897 (Laws 1897, p. 96), was transmitted to his widow or children. That question was definitely settled by this court In Banc in the case of Strottman v. Railroad, 211 Mo. 227. But before we can apply the doctrine announced in that case to the case at bar, we must first determine whether or not those who injured Nimmo were his co-employees. If they were, then that rule applies and would prevent a recovery in this case; but if they were not such, then it would have no application whatever. The record discloses that the construction train which caused Nimmo's death, and the men in charge of the same were engaged in the construction of a railroad for appellant through Lawrence county, Missouri, and that the deceased was in the company's service as a car-repairer. So the question then presented is, were Nimmo and the employees in charge of said construction train fellow-servants, at the time of this unfortunate occurrence? That is a question of fact, and where the evidence is conflicting thereon, it should be submitted to the jury for determination; but where there is no such conflict, as in the case at bar, then it is for the court to determine. There is no use in wasting time and labor in discussing the Act of 1897, commonly called "The Fellow-Servant Act," for the reason that it is but declaratory of the common law upon that subject. That was so held, and properly so, we think, in the case of Strottman v. Railroad, supra. So without further ado or ceremony, we will proceed to consider whether or not Nimmo was, at the time of his injury, a fellow-servant with said trainmen.

Under the law of this State those only are fellow-servants who, under the direction and management of the master in person or some servant placed by him over them, are engaged in the performance of the same common work with no dependency upon or relation to each other except the bare fact that they work together without rank. [Moore v. Railroad, 85 Mo. 588.] The test is not that all work for the same person or company, but they must be engaged in the same common employment and under the control of the same common master. In the case of Lanning v. Railroad, 196 Mo. 647, this court held that where two employees of the same railroad company, who looked to and were subject to the orders or control of separate persons as the master's representatives in the performance of any work, were not fellow-servants. The same rule is announced in the following cases: Miller v. Railroad, 109 Mo. 350; Parker v. Railroad, 109 Mo. 362, l. c. 390; Schlereth v. Railroad, 115 Mo. 87; Erickson v. Railroad, 171 Mo. 647; Koerner v. St. Louis Car Co., 209 Mo. 141.

It cannot be declared as a matter of law that a car-repairer is a fellow-servant with a construction gang, for the reason that the former may and usually does repair all kinds of cars, most of which have no connection or relation whatever with the construction of the road upon which they run. A caboose may or may not be devoted to that use. While they are more or less used in that connection yet more generally they are used in connection with freight trains engaged in the transportation of commodities. But should we assume that the caboose upon which Nimmo was working, at the time of his injury, was being used in that connection, from the fact that it was standing on a switch at a point where the road was being constructed, still it would be a violent presumption to further presume from that fact that he was repairing the

225 Sup—20

caboose under the directions and control of the fore-
man who had charge of the construction work and the
gang of men who were doing that work, for the reason
that common knowledge and experience teach us
that such a foreman, as a rule, has no more knowledge
or experience in car-building and repairing than a
doctor or merchant has. And, upon the contrary, a
car-builder or repairer does not necessarily have to be
familiar with and experienced in railroad construc-
tion. And to presume either to be true, we would be
doing violence to the well-known custom to the con-
trary, which is the basis of all presumptions. So from
that view of the case, we cannot assume, in the ab-
sence of evidence to the contrary, that the carpenter
gang to which Nimmo belonged were fellow-servants
with the construction gang who had charge of and op-
erated the train which struck and killed him. There-
fore, before we would be warranted in holding re-
spondent could not recover because the cause of action
did not survive to the widow, we would have to first
find from the evidence and not from presumptions that
Nimmo was in fact a fellow-servant with those who
injured him, namely, the train crew.

Now, what is the evidence upon that point, as pre-
served in the record? It shows that the carpenters or
car-repairing gang were composed of William Cash,
D. Cummins, Harry Gereki, the deceased, Albert P.
Nimmo, and Billy Mackey, their foreman, and that the
crew in charge of the construction train, which killed
Nimmo, were Charles Douglass, the conductor, W. H.
McEwen, a brakeman, Sam Osborne and H. B. Henry.
But the record does not show who was the foreman who
had charge of the construction work and of the two
construction trains mentioned in the evidence. It does
show, however, that they were separate gangs, engaged
in different lines of employment, and that Billy
Mackey was the foreman of the carpenter gang, and
it is clearly inferable from the evidence that he was

not the foreman of the construction gang, and that he had no control over said construction trains nor any member of the crews thereof. This is shown by the fact that one of the principal issues in the case was, whose duty was it to station a man in front of the cars which were being repaired in order to notify the train crews of the fact that the cars were being repaired, and thereby prevent them from running their trains back against said cars? The same issue was sharply made and contested as to whose duty was it to place out the signal lights and flags which were designed for the same purpose. Respondent's evidence tended to show those duties rested upon the train or construction crews, while that of appellant tended to show that those duties rested upon the carpenter gang. If there had been only one gang of men instead of two, and they had been working together as fellow-servants under one common foreman, then no such questions as those could have arisen. Besides that, it is not contended that the train crews or any one of their number had any authority over or control of the carpenters, or *vice versa,* but each contended that those duties rested upon the other, thereby recognizing the fact that they were separate. From that evidence no other inference can be drawn than that those two gangs of men were separate and distinct gangs, working at separate and distinct lines of employment, and under separate and distinct foremen, and neither foreman had any authority or control over the other or of the men under him.

We are, therefore, clearly of the opinion that Nimmo and the train men were not fellow-servants, and that the cause of action did not abate upon his death, but the same was transmitted to and survived in his widow by virtue of said sections 2864 and 2865.

This was the view the trial court took of this question, and it was fully supported therein by the follow-

ing cases; Moore v. Railroad, supra; Lanning v. Railroad, supra; Koerner v. St. Louis Car Co., supra.

V. Counsel for appellant has lodged several objections to instruction numbered one given for the respondent.

The chief complaint made against that instruction is that it submits to the jury two causes of action in the one instruction, and tells the jury that if they find for plaintiff then they will assess her damages at the sum of $5000. One cause stated is a statutory action under section 2864, Revised Statutes 1899, where the verdict, if for plaintiff, must be for the full penalty of the statute—$5000 or nothing—and the other is one at common law, where the amount of the verdict is governed by section 2865, which provides that the jury may fix the amount of damages at a sum not exceeding $5000. Under the latter section, the jury may fix the amount of the verdict at any sum they may deem just from one cent up to $5000.

In order to properly understand this objection, we must go back to the petition and see what its charges are. By reading it, it will be seen that it clearly states two causes of action in the one count thereof—one under said section 2864 and the other one at common law, as contended for by counsel for appellant. Said section provides, in substance, that whenever any person shall die from any injury resulting from or occasioned by the negligence of any officer or servant of a railroad company, whilst running any locomotive or train of cars, said company shall forfeit and pay to his widow or minor children the sum of $5000.

The cause of action stated under this section is found in the last paragraph of the petition, and is stated substantially as follows: And that while Nimmo's view was entirely obstructed from the track west of said caboose and approaching train upon said track, and without knowing on his part that any such train

was approaching, the defendant, wholly disregarding its duties to deceased, negligently backed a train of construction cars, with a locomotive steam engine, operated by its agents and servants, in and upon said spur switch, at a negligently rapid speed, and negligently failed to give any warning to deceased of the train's approach, by sounding the whistle or ringing the bell, and negligently ran the train back against the caboose into which he was placing the lumber, and thereby negligently pushed or drove said caboose against and over deceased and thereby instantly killed him. Then came the prayer asking for a judgment for the penalty of $5000. Practically all the rest of the petition is taken up in stating a common law action of negligence against defendant; for instance, it negligently failed to provide a reasonably safe place for Nimmo to work, negligently failing to station a man on the rear end of the train to warn deceased of its approach, and negligently obstructing his view of said train, etc., and that in consequence thereof he was run over and killed. There was but the one prayer contained in the petition, before mentioned.

As before shown, there was evidence tending to prove both of these causes of action as stated.

Appellant is now in no position to complain of the two causes of action stated in the one count of the petition, for the reason, as before shown, it waived its right in that regard by not standing on its motion to strike out and by answering over. But the plaintiff, however, gained no greater right by stating the two causes of action in the one count than she would have had had she stated them in separate counts, as good pleading required that she should have done.

If the two causes of action had been stated in separate counts, I suppose it would not be seriously contended that the court could properly have submitted them both to the jury in one instruction, for two obvious reasons: first, because it would be impossible for

any one to ascertain upon which count the verdict was based; and, second, the measure of damages in each not being the same, no one could tell but what the jury might have found for the plaintiff on the common law count, and might have assessed the damages at a sum less than $5000. Clearly such an instruction and verdict would be erroneous, as has been held in the following cases: Silcox v. McKinney, 64 Mo. App. 330; Owens v. Railroad, 58 Mo. 386; Brady v. Connelly, 52 Mo. 19; Bricker v. Railroad, 83 Mo. 391; Mooney v. Kennett, 19 Mo. 551; Pitts v. Fugate, 41 Mo. 405; State ex rel. v. Dulle, 45 Mo. 269; Lancaster v. Ins. Co., 92 Mo. 460; Clark v. Railroad, 36 Mo. 202.

Not only that, but the record affirmatively shows that the jury wished to assess the damages at a sum less than $5000, and the court would not permit it to do so, and from that fact it is inferable that they as a matter of fact found for plaintiff on the common law cause of action stated in the petition, and not on the statutory cause, where the penalty is $5000 or nothing. And in my judgment, there was more evidence to support that cause than there was to support the statutory cause. If it be true that the jury did base their finding on the common law count, then the verdict is too large, as is indicated by the messages sent to the court by the jury through the sheriff regarding the amount of damages they should assess.

The same rule and reasons therefor should apply to a case where separate and distinct causes of action are stated in the same count of the petition; but, however, there is one case in this State that seems to lend countenance to the contrary, namely: Brownell v. Railroad, 47 Mo. 239. In that case Judge WAGNER stated the point and the ruling of the court thereon in the following language:

"The suit was commenced in the circuit court against the defendant for damages for the death of the plaintiff's husband. The petition contains two counts.

The first is based upon the second section of the Damage Act, charging that Charles F. Brownell, the husband, through the negligence, unskillfulness, and criminal intent of the officers, agents, servants, and employees of defendant, whilst running and conducting a certain locomotive and train of cars belonging to defendant, was violently thrown, with said locomotive and train of cars, from the railroad track of defendant and instantly killed, and asks damages to the amount of $5,000. The second count is based upon section 3 of the same act and charges that by reason of the neglect and default of the defendant in not providing and using a safe and secure locomotive and headlight, in not providing competent and reliable switchmen, etc., the said husband was violently thrown, with said locomotive, from the railroad track and instantly killed, and asks judgment for $5,000. The answer was simply a denial of the matters set forth in the petition. The cause was tried before a jury, who, after hearing the evidence, returned a general verdict in favor of the plaintiff for $4,500. Upon this verdict the court entered up judgment, and the defendant appealed.

"The first question is, was the general verdict rendered in the cause the proper one, or should there have been a verdict on each count? The answer to this question depends upon the inquiry, did the two counts in the petition embrace each a separate and distinct cause of action? If they did, the verdict is bad, and the damages should have been assessed upon each cause of action separately. When the petition sets out several distinct causes of action, a verdict for an entire and gross sum cannot be sustained. There should be a separate assessment on each cause or count, in order that the court may know how the issues were found and what amount was assessed on each count. [Mooney v. Kennett, 19 Mo. 551; Clark v. Railroad, 36 Mo. 215; Pitts v. Fugate, 41 Mo. 405; State ex rel. v. Dulle, 45 Mo. 269.] But if there is one entire cause of action,

and one good count in the declaration, a general verdict and a general assessment of damages will answer. [Clemens v. Collins, 14 Mo. 604.]

"It is conceded that there might be a cause of action based on the second section of the act concerning damages, and a different cause founded on the third section, but this certainly could not be done in the same petition and against the same party. The second section applies where the injury is occasioned indirectly by the corporation or owner through the negligence, unskillfulness, or criminal intent of the officers or employees; the third section, where the injury is committed directly by the wrongful act, neglect or default of another. To constitute two causes of action there must be two subjects of complaint. But in the present case there is but one injury, one subject-matter of complaint—the killing of the plaintiff's husband. There being but one cause of action, there could be only one assessment of damages. There could not be a verdict for causing the death one way, and another verdict for causing the death in a different way. The law declares that if the injury is caused under the circumstances mentioned in one section, the damages shall be for a fixed amount; and if under the circumstances mentioned in another section, the damages shall not exceed a certain amount. It is for the jury to determine from the evidence whether the injury was caused and the death resulted under the circumstances as described either in the one section or the other, and then to assess the damages accordingly. There is but one cause of action stated in the petition, and that is the killing, although it is stated in different ways to meet the evidence, which may show that it occurred either in the manner mentioned in one section or the other. It is very certain that a verdict based upon either section would be a complete bar to the prosecution of an action on the other, and where such is the case the cause of action must necessarily be the same.''

By reading that case it will be seen from the statement thereof that the distinguished jurist states that the petition contains two counts—the first based upon the second section of the damage act, and the second based upon the third section thereof. Then when he came to pass upon the question he said: "It is conceded that there might be a cause of action based on the second section of the act concerning damages, and a different cause founded on the third section, but this certainly could not be done in the same petition against the same party." Then he proceeded to state his reason therefor, as I have before quoted. His inconsistency consists in stating that the petition contained two counts based respectively upon the second and third sections of the damage act; and then in his argument he states that no such thing could be done; yet he upheld the general verdict of the jury, notwithstanding defendant's objections. But independent of that matter, the statement of the case does not show that both causes of action were submitted to the jury in one instruction, as was done in the case at bar, but presumably they were not, for the amount of the verdict was for $4500, which could not have been if the instruction had been the same as the one given here.

While that case is not on all-fours with the case at bar, yet it seems to lean against the views before expressed. But, however that may be, it is clearly out of line with a multitude of subsequent cases decided by this court, and notably the case of Casey v. Transit Co., 205 Mo. 721, decided by Court in Banc. In that case it was expressly held, and correctly so in my opinion, that where death was caused in the manner stated in section 2864, it gave a cause of action to the widow, and that where death was caused in the manner stated in section 2865, it gave her another and distinct cause of action, and that both might be brought in the same petition, but that they should be stated in separate counts. That case also expressly held that plaintiff

could not state a cause of action under section 2864 and waive a part of the $5000 penalty and recover for a smaller sum. The ruling in that case is repugnant to the apparent ruling of the court in the Brownell case, supra, and fully supports the view before expressed.

We, therefore, have no hesitancy in saying that the instruction given in the case at bar was manifestly erroneous, and evidently wrought injury to the appellant.

There are many other questions raised and discussed by learned counsel on both sides of this controversy, but most of them are predicated either directly or indirectly upon some one or more of the propositions hereinbefore decided, and with their disposition the remaining questions have but little, if any, merit left on which to stand.

We are, therefore, of the opinion that the judgment should be reversed, and the cause remanded for a new trial.

It is so ordered. *Burgess, Fox* and *Graves, JJ.,* concur; *Gantt, J.,* dissents in separate opinion in which *Valliant, C. J.,* and *Lamm, J.,* concur.

## DISSENTING OPINION.

GANTT, J.—As stated by my learned brother Woodson the judgment in this case was affirmed by Division No. Two of this court, but upon the motion of defendant for a rehearing it was transferred to. the Court in Banc. The cause has been reheard and the conclusion has been reached, as it was in Division, that the circuit court properly overruled the demurrer to the evidence, and that the defendant having pleaded over could not avail itself of its motions to strike out. Our brethren have also ruled that the decision in Division was correct in holding that the plaintiff's intestate was not guilty of contributory negligence

which as a matter of law would bar her recovery, and that the deceased, Mr. Nimmo, was not a fellow-servant with the train crew whose negligence caused his death, and hence the Strottman case has no bearing on the questions presented in this record. In a word, the only error upon which a reversal of the judgment herein is predicated is that the petition states two causes of action in one count, and that the court submitted both causes of action to the jury in one instruction and required them to assess the damages at $5000 if they found the issues for the plaintiff. In the preparation of the opinion in Division, I was met with this contention of counsel for the defendant, but reached the conclusion that while the attorney for plaintiff had mingled in one count matters showing negligence in failing to use ordinary care to furnish plaintiff's husband a reasonably safe place to work, with a statement of facts showing negligence on the part of defendant's trainmen in backing their train down upon and over plaintiff's husband, yet a fair, and even critical, view of this instruction would demonstrate that the jury were finally only directed to find for the plaintiff if they found defendant's servants had carelessly and negligently backed the train of construction cars against the car into which Nimmo was loading the lumber, and thus made a case under section 2864 alone. While it is bad pleading to join two distinct causes of action in one count, it has been the uniform ruling of this court that the remedy in such cases is by motion. [Mooney v. Kennett, 19 Mo. 551; Childs v. Railroad, 117 Mo. l. c. 437; Christal v. Craig, 80 Mo. 367.]

But while the misjoinder in the petition was waived, we conceded it would be error to submit two causes in one instruction, especially where the measure of damages is different, but this court in Robertson v. Railroad, 152 Mo. l. c. 392, pointed out that where two causes of action were improperly blended in one count or were separately stated it was not necessary to in-

struct on both causes, but the instructions may be confined to the cause of action which plaintiff conceives his proofs have sustained, and the other may be disregarded or abandoned by the plaintiff. Surely this was the only sensible rule that could be evolved from such a state of pleadings and evidence.

The instruction is in these words: "The court instructs the jury that the deceased, Albert P. Nimmo, was at the time of his death an employee of the defendant and as such employee it was the defendant's legal duty to use reasonable care in furnishing him a reasonably safe place to work, regard being had to the kind and nature of the employment and to see that he was not subjected to unnecessary and unreasonable danger without informing or warning him of the same, and if you find and believe from the evidence that on or about the —— day of November, 1904, while said deceased was engaged in his duties as employee of defendant in placing a load of lumber in a certain caboose of defendant on its spur or switch east of Aurora, Missouri, the defendant by its agents and servants negligently backed a train of construction cars with its locomotive steam engine, operated by its agents and servants, in and upon said spur or switch at a negligently rapid speed and carelessly and negligently failed to have anyone on or near the rear car furtherest from said engine, to regulate the speed of said train or to give warning of its approach in case of danger, either to persons, or to the engineer in charge of said engine, and negligently failed to give any warning of its approach to said caboose or the cars immediately in front of it and negligently shoved said train upon and against said cars in front of said caboose, with such violence and force that it drove them violently against said caboose, and while said deceased was so employed and was using reasonable care and without fault or negligence on his part, said caboose was caused to be negligently driven, knocked

and violently shoved backward, upon, against and over the deceased, so that the wheel of said caboose caught him between it and the rail of said track, thereby severing his head from the rest of his body, and causing instant death; that the servants and employees running and operating said construction train, knew or by the exercise of reasonable care should have known, that said deceased and others were engaged in working upon said caboose and very likely to be in danger should said caboose be moved without giving said deceased and workmen, warning or notice of same, then your verdict should be for the plaintiff in the sum of five thousand dollars, provided you further find that at the time of the death of said Albert P. Nimmo, he was the husband of Dora A. Nimmo, the plaintiff.''

. Nowhere in the instruction was it left to the jury to find that the place where Mr. Nimmo was required to work was not a reasonably safe place, and that defendant's failure to use reasonable care in providing Nimmo a reasonably safe place was the cause of his death. While the court does say that it is the master's duty to furnish its servant a reasonably safe place to work, and to see to it that the servant is not subjected to unnecessary and unreasonable danger without warning, no right of plaintiff to recover in this action is predicated or founded upon this statement of the law, and standing alone it does not rise to the dignity of an instruction authorizing a verdict on that ground.

On the other hand, the right to recover was based upon the negligent operation of the train by defendant's servants, agents and employees, and this being true, it was proper to fix the recovery at five thousand dollars, no more and no less, because the only cause of action submitted to the jury was one falling under section 2864. While the statement as to the master's duty as to a safe place to work ought not to have been in the instruction it was a correct statement of an abstract proposition of law, which did not prejudice

the defendant's rights. By section 865, Revised Statutes 1899, it is provided that "the Supreme Court, or Courts of Appeals shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action." Following the admonition of this section this court has again and again refused to reverse judgments on account of errors which in its opinion were not prejudicial to the substantial rights of the appellant. [Foster v. Railroad, 115 Mo. l. c. 181; Bradford v. Floyd, 80 Mo. l. c. 209; Blewett v. Railroad, 72 Mo. 583; Boggess v. Railroad, 118 Mo. l. c. 334; Gardner v. Railroad, 135 Mo. l. c. 100; McGowan v. Ore & Steel Co., 109 Mo. 518; Boettger v. Iron Co., 124 Mo. l. c. 105.]

A more meritorious case has seldom been presented to this court. A reversal of the judgment and remanding of this case is equivalent to a final judgment for defendant, inasmuch as Mrs. Nimmo, the plaintiff, has died since this appeal was perfected; for, while her death did not deprive her two infant children of the judgment, if it should be reversed, they cannot now prosecute the cause further. This court has permitted amendments to save a right from the bar of the Statute of Limitations, and it seems to us that if ever the true spirit of section 865 should be invoked this is the case, and the dry technical error, if error it can be called, of merely stating that it was and is the master's duty to furnish his servant a reasonably safe place to work, without predicating any right of recovery thereon, should not be permitted to work a reversal of this judgment, which is so clearly for the right party. *Valliant, C. J.,* and *Lamm, J.,* concur in these views.